THE STATE ex rel. MECHANICS-AMERICAN NAT-
IONAL BANK v. STURGIS et al., Judges of
Springfield Court of Appeals.

In Banc, January 25, 1919.

1. **NEGOTIABLE NOTE: Material Alteration: Conflict in Opinion.**
In American National Bank v. Bangs, 42 Mo. 450, it was ruled
that a mere memorandum designating the time and place of
payment, placed upon the note after its execution as a mere no-
tation for the convenience of the holder in collecting it and not
intended to be a part of the contract itself, did not constitute a
material alteraion as between the indorsee and maker; and con-
sequently the ruling of the Court of Appeals that the cutting off
of the end of a note by the maker, after it had been executed by
an accommodation maker, thereby removing the words "payable
at" from the phrase "payable at Oran, Mo.," and by adding "Bk.
of." so that the phrase was made to read "Bk of Oran, Mo.," thereby
removing or destroying the place of payment, was a material al-
teration as between said accommodation maker and the indorsee,
was not in conflict with the ruling in the Bangs case or any other
decision of the Supreme Court.

2. **CONFLICT IN OPINIONS: Construction of New Statute.** If the
points ruled by the Court of Appeals turned upon a late statute
which had not been previously construed by the Supreme Court,
there is no such conflict in opinion as gives the latter court
jurisdiction upon *certiorari*. For instance, if the Court of Ap-
peals ruled that relator was not a "holder in due course" within the
meaning of certain sections of the Negotiable Instrument Law and
the Supreme Court had not previously construed those sections,
there is no conflict of decision, even though the ruling may be
in conflict with prior decisions construing the Law Merchant.

3. ———: **Facts Conclusively Established.** For all purposes of review
in an appellate court, the finding of a jury in a law case, if founded
on substantial evidence, is conclusive, and is just as binding on
such court as any conceded fact would be. Consequently, a state-
ment in its opinion by a Court of Appeals that certain facts are
"conceded" or "conclusively" established, where they were sup-
ported by substantial evidence and the verdict of a jury, does not
conflict with Gannon v. Gas Light Co., 145 Mo. 1. c. 516, or any
other ruling of the Supreme Court.

4. ———: **Text-Book Law: Wrongful Decision.** In a *certiorari* to a
Court of Appeals, based on a claim that its ruling is in conflict
with the last previous decision of the Supreme Court on a matter

of law or equity, it is wholly beside the question for relator to urge that said ruling is in conflict with text-book law or the decisions of other states. Unless the Supreme Court has previously ruled contrary to the decision of the Court of Appeals, it has no jurisdiction to quash the opinion of the Court of Appeals, whether it be right or wrong. It is only when there is in fact a conflict, and the Court of Appeals is right and the Supreme Court is wrong, that text-book law and rulings from other jurisdiction, called to its attention by respondent, may be of value in aiding the Supreme Court to correct its own errors.

## Certiorari.

WRIT QUASHED.

*Leahy, Saunders & Barth* for relator.

(1) Even uncontradicted testimony of a witness as to alleged facts does not create a conclusive presumption that such facts are true; it is still a question of fact for the jury to determine whether or not such alleged facts are true. Gannon v. Laclede Gas Light Company, 145 Mo. 514, 520. The court in this case confounds uncontradicted evidence with conceded facts, and, in any event, invades the constitutional province of the jury. Wack v. Railroad Co., 175 Mo. App. 127; Dorsey v. Railroad Co., 175 Mo. App. 160; Craig v. United Railways Company, 175 Mo. App. 626; Hill v. Dillon, 176 Mo. App. 200; Coffman v. Realty Company, 176 Mo. App. 699. (2) The court, in holding that the word "Bk of" in pencil on the note changed the place of payment and invalidated the note ignored both Secs. 10094 and 10095, R. S. 1909, and the case of American National Bank v. Bangs, 42 Mo. 450. (3) The net result of this opinion is to hold that the words "Bk of" in pencil on the note would not have invalidated it prior to the Negotiable Instruments Act, which expressly provides that such alterations as against the holder in due course shall be immaterial, but that under said act the note is vitiated. The court, in support of this conclusion, cites Sec. 10057, R. S. 1909. and argues that the addition of the words "Bk of" was a material and prejudicial change as to the maker of the note,

who is generally and universally liable. The said section has no conceivable application to the case at bar. This holding ignores the fact that the note was dated Oran, Missouri, and, in any event, was payable at Oran, Missouri, under the express provision of Sec. 10043, R. S. 1909, and if it should. be conceded, for the sake of the argument, that the words "payable a" were cut off, and that the note originally read "payable at Oran, Mo.," still this point would be wholly immaterial, because, under the terms of the note, it would still be payable at Oran, Missouri, by virtue of its dating, "Oran, Mo., May 28, 1915."

*Gallivan & Finch* and *Oliver & Oliver* for respondents.

(1) The statements of fact by the Court of Appeals is final and conclusive upon this court. State ex rel. v. Ellison, 256 Mo. 666; State ex rel. v. Ellison, 269 Mo. 156; State ex rel. v. Reynolds, 272 Mo. 596; State ex rel. v. Farrington, 272 Mo. 163. (2) The Supreme Court will not attempt to determine the correctness or incorrectness of the views of the Court of Appeals on *certiorari,* but simply and solely whether they conflict with a controlling decision of this court. State ex rel. v. Reynolds, 272 Mo. 596; State ex rel. v. Robertson, 197 S. W. 79; State ex rel. v. Ellison, 269 Mo. 156. (3) This court on *certiorari* will not deal "with the case proper on its merits or demerits." State ex rel. v. Ellison, 272 Mo. 581; State ex rel. v. Ellison, 268 Mo. 238; State ex rel. v. Reynolds, 272 Mo. 596; State ex rel. v. Ellison, 269 Mo. 156. (4) The opinion of the Springfield Court of Appeals in this case was a judicial construction of Sec. 10094 and 10095, R. S. 1909, and no interpretation has been put upon those sections by this court since their enactment. (5) The opinion of the Springfield Court of Appeals would not be disturbed by this court on *certiorari* even if it should conflict with the opinions of appellate courts of other states construing like sections. State ex rel. v. Robertson, 197 S. W. 79; State ex rel. v. Ellison, 269 Mo.

156; State ex rel. v. Reynolds, 272 Mo. 596. (6) As a matter of fact, the construction given Sections 10094 and 10095 by the Springfield Court of Appeals is in accord with the construction placed upon the same sections by other courts of last resort. 1st National Bank v. Barnum, 160 Fed. 245; Elias v. Whitney, 98 N. Y. Supp. 667; Berks Co. Trust Co. v. Lyte, 95 Atl. (Penn.) 719; Ford v. Brown, 114. Tenn. 467; Stanford v. Stanford, 100 Atl. (N. J. Eq.) 398; Dollar Trust Co. v. Crawford, 70 S. E. (W. Va.) 1089; McLeod v. Despain, 49 Ore. 536; Wood v. Arnold, 191 S. W. (Ark.) 760; Andrews v. Sibley, 107 N. E. (Mass.) 396; Bassick v. Aetna Explosive Co., 246 Fed. 1004; Tyler v. 1st Nat. Bank, 150 S. W. (Ky.) 665; Holbart v. Lauritson, 148 N. W. (S. D.) 19, 1915 A. L. R. A. 166. (7) The opinion of the Springfield Court of Appeals is in complete accord with the statute of the State, and the decisions of this court, rendered prior to the adoption of the Negotiable Instruments Laws, which were not modified by said statutes. Secs. 10022, 10094, 10095, R. S. 1909; Bank v. Fricke, 75 Mo. 179; Paramore v. Lindsey, 63 Mo. 66; Carson v. Lumber Co., 270 Mo. 248; Collison v. Norman, 191 S. W. (Mo.) 60.

FARIS, J.—This is an original proceeding by *certiorari*, whereby relator seeks to quash the record of the Springfield Court of Appeals in the case of Mechanics-American National Bank, Appellant, against M. Helmbacher, Respondent, for that, as it is averred, the opinion filed therein by the Court of Appeals is in certain behalves in conflict with the last previous rulings of this court.

The facts in the above case (which for brevity we shall call the Helmbacher case), as these facts were found by the learned Court of Appeals, are thus set fourth in the opinion of that court:

"This is a suit on a promissory note for $1,500, dated May 28, 1915, payable on or before January 1, 1916, interest at eight per cent. This note is as follows:

" '$1,500.                    Oran, Co., May 28, 1915.

" 'On or before Jan. 1st, 1916 after date, we promise to pay to the order of C. D. West, trustee, fifteen hundred 00/100 dollars, for value received, negotiable and payable without defalcation or discount, and with interest from date at the rate of eight per cent per annum, and if the interest be not paid annually to become as principal and bear the same rate of interest until paid. (Signed) Peter Dirnberger. M. Helmbacher.

" 'Bk. of
" 't Oran, Mo.

" 'Due Jan. 1st, 1916.'

"Indorsed on back: 'C. D. West, Trustee.'

"Upon trial, before the court and a jury, judgment below was for the defendant, and plaintiff appealed.

"The payee of the note as originally written was C. D. West. Plaintiff claims to be the holder in due course, for value, and without notice of any infirmities. The defense is that since the signing and delivery of said note it has been materially altered, mutilated, and changed in this manner: (1) That the relation of the parties to the instrument has been materially changed by inserting after the name of the payee, C. D. West, the word 'trustee' without the knowledge or consent of the defendant; (2) that the end of the note has been cut off, thereby cutting off "Payable a' in said note, and inserting 'Bk of' over 'Oran, Mo.,' and it is claimed this changed the place of payment; (3) and that some memorandum or writing has been cut off the end of said note, which memorandum or writing rendered said note non-negotiable; (4) that the note was executed on condition that certain merchandise and other property, including some real estate, assigned by Dirnberger to C. D. West as trustee for the benefit of creditors, would be returned to Dirnberger, and that this property was not returned, and that there was therefore no consideration for the note.

"It seems that Dirnberger, who had been conducting a grocery store, had not prospered, and was being

pressed by creditors. In this situation he made an assignment, and C. D. West, adjuster for the Credit Men's Association of St. Louis, was made the assignee. The defendant signed the note with Dirnberger as accommodation maker. The note was filled out by defendant at his residence on a blank form taken from his blank note book at which time it was signed by Dirnberger and defendant, and was delivered to Dirnberger. A blank from defendant's note book was introduced at the trial, and by comparison the portion cut off clearly appears from the photographic copies in the record. Shortly thereafter Dirnberger delivered the note to H. E. Robocker, credit manager of Adam Roth Grocery Company. Robocker soon thereafter delivered the note to West, who on June 5, 1915, discounted the same at plaintiff bank, and the proceeds were deposited to his credit as trustee for Dirnberger, and paid out to the creditors of Dirnberger. Robocker testified that when he received the note from Dirnberger it was in the same condition as at the trial, except the 'Bk. of' was not on it, and it did not then, of course, bear the endorsement of C. D. West, trustee. C. L. Allen, assistant cashier of plaintiff bank, testified that when he discounted the note for his bank it was in the same condition as at the trial. West testified that he did not think the 'Bk of' was written on the note when he received it from Robocker, but that the word 'trustee' was in the note when he received it. It is conceded that the word 'trustee' was written, and that the end of the note was cut off and 'Bk. of' inserted, after defendant signed the note, and all this without his knowledge or consent. Two questions arise upon this record: (1) Is plaintiff a holder in due course? (2) Did the addition of 'trustee' and 'Bk of' and cutting off 'Payable a' under the circumstances so change the relation of the parties and the place of payment as to amount to a material alteration?"

After setting out the facts of the case thus, the Court of Appeals proceeded to apply to these facts the provisions of the Negotiable Instrument Law. [Laws

1905, pp. 243, et seq.]   Having so applied its construction of divers sections (Secs. 10030, 10094, 10095, and 10022, R. S. 1909) thereof to what it found to be the facts of the Helmbacher case, it held: (a) that plaintiff bank was not a "holder in due course," and (b) that (1) the addition of the word "trustee" following the name of the payee, (2) the addition of the words "Bk of," designating the place of payment, in conjunction with (3) the cutting off of some inch or more from one end of the note, which destroyed the words "payable at," changed the place of payment and constituted such "material alterations" thereof as to prevent plaintiff's recovery as against an accommodation maker.

In reaching the conclusion first supra, the Court of Appeals felt constrained to construe Section 10022, Revised Statutes 1909, in respect of what constitutes a "holder in due course;" and it based its opinion that the changes of the note in the modes stated constituted "material alterations," upon its construction of Section 10094 and 10095, Revised Statutes 1909.

I.   Relator calls our attention to a number of cases ruled by us, which it ably and strenuously urges are in conflict with the rulings of the Court of Appeals upon the points supra.   Touching all of these cases except one (American National Bank v. Bangs, 42 Mo. 450), general reference will be made hereinafter, since in the view we are constrained to take of the case all these cases, with the exception noted, may be discussed and harmonized, or distinguished together.   The facts in the Bangs case, supra, were briefly these: Bangs and another, one Deady, seemingly partners, made a note to "Fritsch & Simonton, New York," for one thousand dollars, dated October 10, 1866, and due three months after date. The payee assigned and endorsed this note before maturity to the plaintiff therein, which being compelled to sue thereon, lost below and brought the case here by writ of error, *Dehors* the body of said note, and oc-

*Alteration of Note.*

cupying in that behalf a position in all respects similar to that of the words "payable at" upon the note in the Helmbacher case, there was printed the word "Due," followed by a blank, or blank space. In this blank, after the making and delivery of the note, there was written the words *"at Goodyear, Bros. & Durand's, New York, Jan. 10-13,"* thus making this line to read "Due at Goodyear, Bros. & Durand's, New York, Jan. 10-13." Upon this state of facts it was successfully urged *nisi* and contended here, that the note was void as against the makers. This court upon that point said:

"The question, then, is, whether these words attached to the foot of the instrument are to be taken as a part of it or only a private memorandum, which can in no way affect the liability of the makers. It will be found upon an examination of the authorities upon this question that where such words are not incorporated in the body of the contract itself, nor in any manner annexed to the instrument by the maker for the purpose of fixing a place of payment, they are to be taken as a mere memorandom, and therefore immaterial. . . . The memorandum in this case does not increase or vary in any respect the liability of the defendants, and therefore presents no obstacle to the recovery of the plaintiff. It is admitted that in cases where there was a contest between the holder and indorser, such an addition or memorandum, without the knowledge and consent of the latter, has been held sufficient to discharge him. But as to the makers themselves, the question is altogether different. This opinion has proceeded upon the idea that the words in question were simply a memorandum made at the bottom of the note after its execution, and not intended to be a part of the contract itself. Such appears to be the fact, so far as the case is presented here by the record, but we will not assume it to be so for the purpose of entering up judgment in this court."

In other words, this court ruled that if such a memorandum was only intended to be a mere notation

for the convenience of the holder in collecting the note, and not intended to be a part of the contract itself, the addition of the memorandum did not constitute a material alteration as between the indorsee and the maker. It was intimated that this question of intention could be cleared up by testimony upon another trial; for the court expressly refused to foreclose it by a judgment here, but sent the case back to be retried.

So far as counsel upon either side have pointed out and so far as we have been able to find, the Bangs case is the last previous ruling upon the materiality of a memorandum such as was made in that case and in the Helmbacher case. The rule announced in the Bangs case seems so consonant with reason and good sense, that we ought not to go back fifty years to abrogate it; *a fortiori* at a time when *in effect it is* urged, that the high cost of paper has driven those dealing in negotiable instruments to the custom of making such memoranda— as place or person of convenient collection, and the computation of interest—upon the very faces of the instruments themselves. But reading the whole opinion of the Court of Appeals in the Helmbacher case, we do not get the view that the learned court held that such a pencil memorandum as "Bk. of" which was put on as a mere notation of the name of a convenient collecting agent, was of itself alone sufficient to constitute a "material alteration" of the note. Rather do we incline to the view that what was meant was that the shearing off of the words "payable at," taken in connection with the addition of the words "Bk. of," together constituted a material alteration within the eaning of Section 10095, Revised Statutes 1909. There are, it is true, some expressions in the learned opinion which considered alone and without the whole context might on first blush incline us to a different view. But in summing up toward the close of the opinion the Court of Appeals says: "It appears that Dirnberger added the word "Trustee" after defendant had signed the note, and without defendant's knowledge and consent, as the word trustee is in Dirnberger's hand-

writing. . By elimination it would appear that Dirn-berger cut off the end of the note and *thereby destroyed or removed the place of payment.*" (Italics ours.) For the latter reason alone, we think this contention of relator should be disallowed.

II.   Relator urges upon our attention a number of other cases which it contends are in conflict with other views held in the Helmbacher case.   But the difficulty we meet in agreeing with the latter con-tention of relator arises from the fact, foreshadowed above, that the Court of Appeals ruled the points alleged to conflict with our prior decisions pursuant wholly to its construction of certain sections of the Negotiable Instrument Law. This law was not enacted till 1905 (Laws 1905, pp. 243, *et seq*) ; all of the cases called to our attention were ruled long prior to the latter date.   Neither the ex-haustive research of learned counsel for relator, nor our own somewhat careful examination of the authori-ties, has found for us any case wherein we have con-strued the particular sections of the Negotiable Instru-ment Law upon which the questions turned, which were held in judgment in the Helmbacher case. . It is per-suasive that the learned Court of Appeals, as it frankly confesses, was likewise unable to find any case wherein *any appellate court in this State* had theretofore con-strued said Sections 10094 and 10095, Revised Statutes 1909. [Mechanic's American National Bank v. Helmbac-her, 199 Mo. App. 1. c. 178.] Since then, the points raised upon the record before the Court of Appeals in the Helmbacher case turned upon new and theretofore *unconstrued* statutes, they were matters of first impres-sion in this State and no conflict with any prior de-cision of ours was possible.   The Court of Appeals had the right to construe the above sections of the Negotiable Instrument Law in such wise as it saw fit and to say authoritatively (till after we shall have ruled the precise point, or principle) what those sections mean, and to what state of facts they are applicable,

*Unconstrued Statute.*

Indeed, as we have heretofore had occasion to suggest, they even had the right to construe these sections erroneously; which right to decide wrong is inherent in all courts, as a casual glance at any table of overruled cases will make manifest. Our own prior decisions, urged upon us as conflicting with the Helmbacher case, followed the Law Merchant and not the subsequently enacted Negotiable Instrument Law. Regardless, therefore, of whether there is or is not a conflict, and whether the Court of Appeals is or is not right (touching which we do not rule), statutes have intervened and we have no authority to interfere. For these reasons we are compelled to disallow this contention of relator.

III. It is urged, however, by relator that the statement in the opinion of the Court of Appeals that "it is conceded that the word 'trustee' was written and that the end of the note was cut off and 'Bk. of' inserted, after defendant signed the note and all this without his knowledge or consent," is in conflict with the rule announced in Gannon v. Gas Light Co., 145 Mo. l. c. 516-517, where it was said by this court:

Conceded Facts.

"The plaintiff was entitled to have the jury determine the credibility of the testimony offered, even though she offered nothing to contradict that offered in behalf of defendant, and it is not to be assumed by the court as a matter of law that evidence is true, satisfactory or convincing to the body called upon to hear it, from the mere fact that no one by words contradicts what has been uttered."

While we do not find that plaintiff, or its learned counsel, did make the concession stated, but gather on the contrary from other parts of the opinion that the fact whether such alleged alterations were made before or after the instrument was signed by Helmbacher, was denied throughout; it is yet apparent from other parts of the opinion that the use of the word "conceded" was a mere slip of the pen. For elsewhere in the course of the opinion it is said: "The note sued on by the most casual inspection shows that the

words 'trustee' and 'Bk. of' were written in this note in a different handwriting and in different ink to that in which the balance of the note was written ['Bk. of' was in pencil] and *the evidence shows conclusively* that these additions were made at a different time to that when the balance of the note was written.'' Again it is said in the opinion: ''It appears that Dirnberger added the word 'trustee' after defendant had signed the note and without the defendant's knowledge or consent, as the word 'trustee' in the face of the note is in Dirnberger's handwriting.''

We do not think that the finding and statement of the Court of Appeals that the evidence showed ''conclusively,'' or that it was ''conceded'' that the changes alleged to have been made in the note were so made after Helmbacher signed it, are in conflict with the rule quoted above from the Gannon-Gas Light case. In the Gannon case it was strenuously contended here that the trial court erred in' not taking the case from the jury for that the evidence offered by defendant explained conclusively when and how the electrically charged wire fell, and that this explanation irrefutably negatived defendant's liability. This court held that such refusal to sustain the demurrer offered to the evidence upon the whole case was not error, because the plaintiff had the right to take the jury's finding upon the credibility of the evidence offered by the defendant in explanation of how and when the wire fell. In the Helmbacher case the defendant testified that the note was not cut off nor was the word ''trustee'' written therein when he signed it. No one, it seems, categorically denied this testimony upon the trial. Relator correctly insists that under the rule in the Gannon case the plaintiff had the right to have the jury pass upon the credibility of defendant's testimony. Unquestionably, the Gannon case holds this. But the learned Court of Appeals was dealing with a condition and not a theory. The jury had passed upon the credibility of Helmbacher's testimony; had seen fit to believe it, and the trial court had in overruling the motion for a new trial

set the seal of his approval upon the finding of the jury upon that point. In considering whether it was, or was not, a fact that the note was unchanged when Helmbacher signed it, the Court of Appeals had the right to impute absolute verity to the jury's finding upon this question and to say that it was conclusively proven that the changes were made in the note after Helmbacher signed it. For all of the purposes of review in the appellate court, the finding of a jury in a case at law, wherein such finding is bottomed on substantial evidence, is "conclusive" and is just as binding upon the appellate court as any "conceded" fact would be. [In re Lankford's Estate, 272 Mo. 1.] The Gannon case dealt with a theory advanced by the appellant therein; the Helmbacher dealt with a condition brought about by the finding of the jury, and the approval of that finding by the trial court. We think this contention of conflict is therefore untenable.

IV. In conclusion, we may add that it is, so far as concerns *relator,* wholly beside the question to urge text-book law and the decisions of sister states in a case brought up to us from a Court of Appeals by

Foreign Decisions.

*certiorari* for quashal. Unless we have prior to the filing of the opinion by a Court of Appeals ruled in conflict with the opinion of which quashal is sought, we have no constitutional power to interfere with the decisions of the Courts of Appeals, moving within their constitutional orbits of jurisdiction, whether such decisions be right or wrong. Until we have ruled upon the question, or until another Court of Appeals has upon a given point held a different view and the case has been certified up to us, the errors of any judge of a Court of Appeals, however grievous are so far as this court is concerned, political questions solely. [Majestic Mfg. Co. v. Reynolds, 186 S. W. 1072.] Of course, as has often happened, if there is in fact a conflict and the Court of Appeals is right upon the point and we are wrong, text-book law and rulings from other jurisrictions, called to our attention

by the *respondent*, may be of value in aiding us to correct our own errors.

We conclude that our writ herein was improvidently issued and ought to be quashed. Let it be so ordered.

All of the judges concur; *Bond, C. J.*, in result.