Vol. 295]        APRIL TERM, 1922.        307

State ex rel. Mo. State Life Ins. Co. v. Allen.

THE STATE ex rel. MISSOURI STATE LIFE IN-
SURANCE COMPANY v. WILLIAM H. ALLEN et
al., Judges of St. Louis Court of Appeals.

In Banc, August 28, 1922.

1. **CERTIORARI: Conflict in Opinions: Merits of Case: Conflicting
   With General Principles.** In the consideration of a writ of *certio-
   rari* directed to the Court of Appeals on the ground that its opinion
   in a certain cause is in conflict with the last previous ruling of
   the Supreme Court on the subject, the merits of the case as pre-
   sented to the Court of Appeals are not considered, but only whether
   the Court of Appeals in its application of the rules of law to the
   facts stated in its opinion announced a conclusion contrary to the
   last previous ruling of the Supreme Court upon the same or a
   similar state of facts. But although the Supreme Court has not
   passed upon the precise question, if the conclusion reached by
   the Court of Appeals is in conflict with general principles an-
   nounced by the Supreme Court its opinion will be quashed.

2. **LIFE INSURANCE: Days of Grace: Extend from Date of Delivery
   of Policy.** Where the application for a life insurance policy was
   dated August 14, 1917, and contained the provision that "the in-
   surance hereby applied for shall not take effect until the first
   premium is paid and the policy delivered and accepted," and the
   policy, dated August 14, 1917, but issued and delivered September
   17, 1917, contained the provision that the premiums should be
   paid annually and "if any premium is not paid when due this
   policy shall cease and determine" except that "if any premium is
   not paid on the date when due this policy shall continue in full
   force from said due date for the term of thirty-one days," and
   made the application a part of the contract, and the insured hav-
   ing died on September 26, 1918, without having paid anything ex-
   cept the first annual premium, a decision by the Court of Appeals
   that, the application being expressly made a part of the policy
   and providing that the insurance should not take effect until the
   premium was paid and the policy delivered and accepted, the
   "due date" for paying premiums was the date of the delivery of
   the policy, regardless of its date, and that the days of grace ex-
   tended thirty-one days after said "due date," namely thirty-one
   days after September 16, 1918, and that the policy was therefore
   in full force when insured died on September 26, 1918, contravened

State ex rel. Mo. State Life Ins. Co. v. Allen.

no prior decision of the Supreme Court, nor any general principles of law announced by it, but on the contrary, except as to the date when days of grace begin to run, was in harmony with Halsey v. Insurance Co., 258 Mo. 639, wherein it was ruled that the insured had a full year's insurance from the date of the delivery of the policy, regardless of the date, in which to pay a premium. [JAMES T BLAIR, C. J., dissenting.]

3. ——: Construction: Most Favorable to Insured. The Court of Appeals in ruling that the insurance policy and the application therefor expressly made a part of the contract should be construed together, and that if the policy is so drawn as to require interpretation and to be fairly susceptible of two constructions, the one most favorable to the insured will be adopted, contravened no previous ruling of the Supreme Court, and therefore had power to so rule.

4. ——: Vexatious Delay: Attorney Fee: Unsettled Legal Question. The insurance company is to be allowed to entertain an honest difference of opinion as to its liability on a policy, and to litigate that difference; and where it appears from the facts stated in the opinion of the Court of Appeals that the question of its liability under the facts had never been expressly decided by the Supreme Court and that the conclusion reached by it that there is a difference of opinion in other jurisdictions on the question, its conclusion that the company should be penalized with attorney fees and damages for refusing to pay and standing suit on the policy is in conflict with the decision in Non-Royalty Shoe Co. v. Phoenix Assurance Co., 277 Mo. 399, l. c. 422, and must to that extent be quashed.

## Certiorari.

RECORD SUSTAINED IN PART AND QUASHED IN PART.

*Jourdan, Rassieur & Pierce* for relator.

(1) The Court of Appeals erred in overruling assignments of error made by relator and in overruling relator's motion for rehearing, for the reason that the Court of Appeals in so ruling changed the terms of the contract in suit by judicial construction, and in so ruling the opinion of the Court of Appeals conflicts with con-

trolling decisions of the Supreme Court in the cases of Liggett v. Bank, 233 Mo. 590, and Ashbrook v. Ins. Co., 94 Mo. 72. Liggett v. Bank, 233 Mo. 590, syl. 4, l. c. 591; Ashbrook v. Ins. Co., 94 Mo. 72, 77; Tigg v. Register Life & Annuity Ins. Co., 152 Iowa, 720; Wilkinson v. Commonwealth Life Ins. Co., 176 Ky. 833; Forch v. Western Indemnity Co., 157 Ill. App. 248; Johnson v. Mutual Benefit Life Ins. Co., 143 Fed. 950; McConnell v. Provident Savings Life Assur. Soc., 92 Fed. 769; Tibbetts v. Mutual Benefit Life Ins. Co., 159 Ind. 671; Wilkie v. N. Y. Life Ins. Co., 146 N. C. 513; Bryan v. National Life Ins. Assn., 21 R. I. 149; Millar v. Western Union Life Ins. Co., 180 Pac. (Wash.) 488; Jewett v. Northwestern National Life Ins. Co., 112 N. W. (Mich.) 734; Talbot v. Union Central Life Ins. Co., 241 Fed. 669; Halsey v. Ins. Co., 258 Mo. 659; Stout v. Mo. Fidelity & Cas. Co., 179 S. W. 993; Penn v. Travelers Ins. Co., 225 S. W. 1033; Taylor v. Loyal Protective Ins. Co., 194 S. W. 1055; Maupin v. Surety Co., 220 S. W. 21; Dunn v. Life & Accident Ins. Co., 197 Mo. App. 471; Banta v. Casualty Co., 134 Mo. App. 226; Eaton v. Coal Co., 125 Mo. App. 194; Mitchell v. German Commercial Accident Ins. Co., 179 Mo. App. 1; Elms v. Mutual Benefit Life Ins. Co., 231 S. W. 653; Bothman v. Metropolitan Life Ins. Co., 231 S. W. 1007. (2) The Court of Appeals erred in holding that relator was guilty of vexatious delay in failing to pay the face of the policy in suit when there was a meritorious dispute as to the law governing relator's liability, and said ruling is in conflict with controlling decisions of the Supreme Court in the cases of Non-Royalty Shoe Co. v. Phoenix Assurance Co., 277 Mo. 399, and Berryman v. Southern Surety Co., 227 S. W. 102. Kahn v. Assurance Corp., 187 Mo. App. 220; Weston v. American Ins. Co., 177 S. W. 794; Blackwell v. Insurance Co., 80 Mo. App. 78; Miller v. Fireman's Ins. Co., 229 S. W. 267; Berryman v. Motor Car Ins. Co., 199 Mo. App. 507.

*Douglas W. Roberts* for respondents.

(1) On *certiorari* this court is concerned only with whether the final opinion of the Court of Appeals conflicts with the last previous decision of this court. State ex rel. v. Reynolds, 230 S. W. 642; State ex rel. v. Reynolds, 214 S. W. 369; State ex rel. v. Ellison, 278 Mo. 649; State ex rel. v. Reynolds, 272 Mo. 569; State ex rel. v. Ellison, 269 Mo. 151. (2) It is not concerned with conflicts with decisions of Courts of Appeals. State ex rel. v. Reynolds, 230 S. W. 642; State ex rel. v. Ellison, 229 S. W. 1059. (3) This court will not go beyond the opinion of the Court of Appeals for evidence. State ex rel. v. Ellison, 229 S. W. 1059; State ex rel. v. Ellison, 278 Mo. 42; State ex rel. v. Ellison, 273 Mo. 218. The decision of the Court of Appeals in no wise conflicts with any of this court. Halsey v. Ins. Co., 258 Mo. 659; Mathews v. M. W. A., 236 Mo. 326-342; Barber v. Mo. State Life, 269 Mo. 42; Mo. State Life Ins. Co. v. Salisbury, 279 Mo. 54.

DAVID E. BLAIR, J.—This is an original proceeding in *certiorari,* wherein relator seeks to quash the opinion of the St. Louis Court of Appeals in the case of Ellen M. Landrigan v. Missouri State Life Insurance Company.

We quote from the opinion of respondents as follows:

"Plaintiff, the widow of John A. Landrigan, brings this suit to recover as beneficiary in a life insurance policy taken out by the husband from the defendant company. The judgment of the trial court was for the plaintiff. Defendant appeals.

"The facts are undisputed. The decision of the case rests upon the construction of the policy. The court below gave a peremptory instruction to the jury to find for the plaintiff for the full amount of the policy, $2000, with interest from October 24, 1918, and authorized the jury to allow attorney fees and damages for vexatious delay.

The verdict was for $2755, made up as follows: Amount due under policy, $2000; interest, $55; damages, $200; attorney fees, $500.

"It is agreed that Landrigan, on the 12th day of September, 1917, applied to the defendant company for a policy of insurance. He gave the date of his birth as February 15, 1876. The agent, James F. Halley, who secured the application, testified that he told the insured at the time that by dating back the application to August 14, 1917, which was a date nearer to Landrigan's forty-first birthday, he could save something on the annual premium. The exact testimony on this point we will later set out.

"The application was dated August 14, 1917. On September 12, 1917, the company issued the policy, whereby the life of Landrigan was insured for $2000, applying the rate on the age of forty-one years. The policy was delivered September 17, 1917, and the insured at that time signed the usual form receipt for same.

"The policy contained the following provisions:

" 'This insurance is granted in consideration of the application herefor, a copy of which is attached hereto and made a part hereof, and of the payment in advance of sixty-eight and 20/100 dollars, being the premium for the first year's insurance under this policy ending on the fourteenth day of August, 1918, which is term insurance. The insurance will be continued thereafter as whole life insurance upon the payment of the annual premium of sixty-eight and 20/100 dollars, on or before the fourteenth day of August, in every year during the continuance of this policy.

" '  .  .  .  If any premium is not paid when due, this policy shall cease and determine, except as hereinafter provided.

" 'If any premium after the first is not paid on the date when due, this policy will continue in full force from said due date for the term of thirty-one days, which is the period of grace allowed hereunder, without interest charge, in the payment of any such premium.'

''The application contained the provision 'that the insurance hereby applied for shall not take effect until the first premium is paid and the policy delivered to and accepted by me during my lifetime and good health;' also, that the premiums shall be payable annually 'after the first year.' There is a provision in the policy that the application and the policy together shall constitute the entire contract.

''The insured died on September 26, 1918, without paying anything after the first annual payment. The annual premium for the policy at the age of forty-two years on a $2000 policy would have been $70.64, and by dating the application back to August 14th, the premium was $68.20. It was shown at the trial that demand had been made for the payment of the policy on October 24, 1918. The company insisted that the policy had lapsed because the second premium was not paid on the due date (August 14, 1918), nor within the thirty-one days after such date, and that notice had been sent to the insured to pay the premium.

''It is necessary that we have clearly before us the dates which are important:

''August 14, 1917, application was dated;

''September 12, 1917, policy was issued;

''September 17, 1917, policy was delivered;

''August 14, 1918, due date, as stated in the policy;

''September 14, 1918, thirty-one days from due date (as stated in the policy);

''September 15, 1918, when year's term insurance expired;

''October 16, 1918, thirty-one days from end of one year's term insurance;

''September 26, 1918, insured died.

''The solution of this case rests in the answer to the question: When did the period of thirty-one days of grace begin under this policy? If the term of grace began from and after the due date as written in the policy, that is, the date denominated 'due date' in the

policy, then of course it ended on the 14th day of September, 1918. If, on the other hand, it runs from the anniversary of the delivery date, then it ended October 17, 1918. The death having occurred on September 26, 1918, if the first hypothesis is correct, the insurance lapsed; if the latter is true, then the insured died within the days of grace and the policy was in force.

"It is apodeictical that if the premium was not paid when *due,* then the policy lapsed. It was due either at the time denominated as the due date on the face of the policy, or on the anniversary of its delivery to the insured with thirty-one days' grace from such accepted date.

"The plaintiff asserts that the application for the insurance, made a part of the policy, provided that the policy should not take effect until delivery, and since the policy was not delivered until September 17, 1917, the insurance continued until September 17, 1918, and for thirty-one days thereafter. Landrigan having died on September 26, 1918, that therefore such death was within the reach of the policy, and relies upon the Missouri cases of Halsey v. Insurance Co., 258 Mo. 659, 167 S. W. 951, and Stout v. Fidelity & Casualty Co., 179 S. W. 993, and upon other authorities which we will later discuss."

The opinion then proceeded to discuss the Halsey and Stout cases, supra, and proceeded as follows:

"It is clear from these two Missouri authorities that the Landrigan policy did not become effective on August 14, 1917, but began on the date of delivery, September 17, 1917, and had the insured died within one year of September 17, 1917, the beneficiary certainly would have been entitled to the insurance, because the insured had paid for one full year's insurance from September 17, 1917. This seems to be conceded by appellant. The cases cited on this point all run back to McMaster v. New York Life Ins. Co., 183 U. S. 25 (reversing New York Life Ins. Co. v. McMaster, 87 Fed. 63, opinion by SANBORN, J., either as following or as distinguishing it."

After discussing cases from other states and the Federal courts respondents proceed as follows:

"Our Supreme Court in the Halsey Case, and this court in the Stout Case, adopted the rule of construction in insurance policies, where the policy (or the application, a part of the policy) contains the usual 'effective-on-delivery-and-payment' clause, and the due date written in the policy is another and different date, that said date of delivery of the policy marks the beginning of the effectiveness of the policy. Where the premium is paid for the annual period, the policy runs for one year from said date. And from the authorities we have reviewed, we are persuaded to believe the correct rule to be that the period of grace begins at the termination of the date for which the insurance was actually paid by the insured. That is to say, if the policy begins and ends under the premium paid for the yearly term from the date of delivery and one year thereafter, then the period of grace allowed the insured begins on the anniversary of the date of delivery of the policy with the first payment, or at the end of the year of insurance as it runs under the premium paid. If under our law the date of the policy, or due date as written in same, does not control as to the insurance period for which the insured paid the premium, then this due date written in the policy does not control as to the beginning of the days of grace. The provision allowing a month's grace to the insured means a month from the time that the premium has become consumed. In other words, it carries in force and keeps alive the policy one month from the date same has run its course under the paid premium. This follows the reasoning in the Halsey Case, and adopts the better reasoned cases from other jurisdictions, and is consonant with what was said by the Supreme Court of the United States in the McMaster Case.

"Landrigan, under the premium paid by him, was insured from September 17, 1917, until the last minute of September 16, 1918. This cannot be doubted in the face

of the controlling decisions in our State. Now, if he was insured on his paid premium for that period in disregard of the due date as written in the policy, to-wit, August 14th, then it follows, as the night follows the day, that the extension by way of grace above and beyond the term covered by the premium began September 17, 1918, and this policy allowing thirty-one days' grace, carried the policy to and beyond September 26, 1918.

"We therefore hold that the court below correctly construed this policy. In reaching this conclusion we have had before us the rule on interpretation of insurance policies which is universally applied in this State and elsewhere. It is, that if the policy is so drawn as to require interpretation and to be fairly susceptible of two different constructions, the one will be adopted that is most favorable to the insured. It is unnecesary to explain that this rule is a just one."

Relator contends that the conclusion reached and announced by respondents in the Landrigan Case is in conflict with the cases of Liggett v. Bank, 233 Mo. 590, syllabus, 4, l. c. 591, and Ashbrook v. Insurance Co., 94 Mo. 72, l. c. 77.

I. Before proceeding to discuss the questions involved, it is well to have in mind the applicable rules governing the scope of our inquiry in this character of proceeding. This court does not go into the merits of the case as the same were presented to respondents. We are here concerned solely with the question of conflict. As was said by ELDER, J., in State ex rel. Continental Insurance Co. v. Reynolds, 290 Mo. 362, l. c. 371:

"It is not our province to determine whether the Court of Appeals erred in its application of rules of law to the facts stated in its opinion, but only whether upon those facts it announced some conclusion of law contrary to the last previous ruling of this court upon the same or a similar state of facts."

To the same effect are the conclusions announced by this court in State ex rel. American Packing Co. v.

Reynolds, 287 Mo. 697; State ex rel. Peters v. Reynolds, 214 S. W. 121, l. c. 122; State ex rel. Bank v. Sturgis, 276 Mo. 559, l. c. 568; Majestic Mfg. Co. v. Reynolds, 186 S. W. 1072, l. c. 1073 and other cases.

II.    Relator does not contend that this court has passed upon the precise question, but does contend that the conclusions reached by respondents are in conflict with general principles announced by us.    If so, the record must be quashed.    In Liggett v. Bank, supra, at page 601, this court said: . "In construing the letter, a court is not at liberty, in order to fasten liability, to add or take away words, thereby altering the sense and either enlarging or cramping the assurance given in an instrument."    In that case the sufficiency of plaintiff's petition below was up for judgment.    Plaintiff sought to hold the defendant in that case liable for sums advanced to one Levy on the strength of a letter written by defendant and addressed "to whom it may concern."    Said letter was held not to be a letter of credit, and it was further held that its language could not be construed as a commercial recommendation upon which an action for fraud and deceit would lie.    This court was there dealing with a situation where plaintiff was contending for a construction not within the plain and unambiguous language of the letter.

Respondents have announced no conclusion in conflict with the rule laid down in the Liggett Case.    The policy provided that annual premiums must be paid on August 14th and unless so paid when due the policy should terminate, except that thirty-one days of grace after due date were allowed for payment of premiums during which the policy was to be continued in force.    Those provisions standing alone and unmodified by other provisions were clear and unambiguous.    Respondents did not construe them otherwise.    But the application, which was expressly made a part of the policy, provided that the insurance should not take effect until the premium was paid and the policy delivered to and accepted by the

insured. Under our ruling in the Halsey Case insured had a full year's insurance from the delivery and acceptance of the policy, regardless of the date of the policy. Respondents were confronted with the necessity of construing all the terms of the policy, including the provisions of the application. The Court of Appeals followed the Halsey Case and with light from the decisions of courts in other states and the federal courts reached and announced its own decision on the question.

Relator contends that the opinion of respondents is in conflict with the Ashbrook Case, supra. Relator contents itself with citing the case. There is no discussion of it and we are unable to see where any possible conflict exists.

Respondents properly undertook to construe the contract of insurance as a whole—to give effect to all its terms. They were confronted with the case of Halsey v. Insurance Co., supra, wherein Division One held that, where the application, made a part of the policy, provided that the insurance should not go into effect until delivery to the insured and the first premium was paid by him, the premium tendered *after* the date of the policy and within one year from the date of delivery to the insured was tendered within the time agreed to by the parties, although the application specified that annual premiums should be payable in advance upon a date even prior to the date of tender. There was no provision for days of grace in the Halsey policy of insurance. Upon the consideration of the facts in the case before them and the two provisions, one calling for payment of annual premiums on August 14th (the due date specified in the policy) and the other (in the application expressly made a part of the policy), that said insurance should not take effect until the first premium was paid and the policy delivered to and accepted by the insured, respondents were called upon to construe the two provisions together, and they were not limited solely to the language of the policy proper, exclusive of the application. Clearly

the conclusion announced by respondents in construing the application and the policy together, "that if the policy is so drawn as to require interpretation and to be fairly susceptible of two different constructions, the one will be adopted that is most favorable to the insured," is not in conflict with the Liggett Case or any other decision of this court. Until this court has ruled on the question, the Court of Appeals had the undoubted power thus to decide the question authoritatively, whether or not we might come to the same conclusion.

III.   Relator also contends that the opinion of respondents contravenes decisions of this court in sustaining the judgment of the trial court for attorneys' fees and damages for vexatious delay on the part of relator and that such opinion should be quashed in that respect. Respondent said:

"Having concluded that the court correctly interpreted the policy of insurance, we next consider the appellant's insistence that the court erred in submitting to the jury the question of attorneys' fees and ten per per cent damages for vexatious delay, under Section 6337, Revised Statutes 1919; also, in failing to direct the deduction of the unpaid second premium of $68.20 due on the policy at the time of the insured's death. Admittedly, there was a wilful refusal to pay the policy; the record discloses that demand after demand was made for such payment by representatives of the beneficiary. Plaintiff's counsel pointed out to the company that there were clear authorities holding that the delivery date of a policy, such as was under consideration, was the due date, and, of course, there was the legal presumption that the insurance company knew the status of the law.

"There was no dispute as to the facts in the controversy. The question was purely one of law, that is, what constituted the due date of the policy, and this question had been settled since the decision of the Halsey Case by our Supreme Court. Under this decision the other questions logically solved themselves. In the main,

therefore, there was no undecided legal question involved, but simply a construction of a policy which the company itself drew.

"We are mindful of the case of Non-Royalty Shoe Co. v. Phoenix Assur. Co., 277 Mo. 399, 210 S. W. 37, and deem our ruling herein in full accord with that authority. We think the record before us affords facts and circumstances which warranted the court in submitting to the jury the question of damages and attorney fees under the statute."

The foregoing is said by relator to conflict with decisions of this court in Non-Royalty Shoe Co. v. Phoenix Assurance Co., 277 Mo. 399, 1. c. 422, and with Berryman v. Southern Surety Co., 285 Mo. 379, 227 S. W. 96, 1. c. 102. In considering the question of conflict it must be remembered that we do not review for ourselves the facts upon which the decision of the Court of Appeals is bottomed, except in so far as those facts are stated in the opinion. [State ex rel. McNulty v. Ellison, 278 Mo. 42, 1. c. 47; State ex rel. Shawhan v. Ellison, 273 Mo. 218, 1. c. 230; Ex parte Brewing Co. v. Ellison, 287 Mo. 139, 229 S. W. 1059, 1. c. 1061.] Conceivably, as an appellate court reviewing the very facts before respondents, we might reach a different conclusion; but before we are authorized to quash the opinion we must find conflict between the rule announced by respondents *as based on the facts stated in the opinion* and some controlling decision of this court. We cannot go into the record made by the trial court and dig out facts not stated by respondents in order to overturn their opinion.

In the Non-Royalty Shoe Company Case at page 422, FARIS, J., said:

"We are convinced that a vexatious refusal to pay an insurance loss is not to be deduced from the mere fact that upon suit the verdict is adverse to the defendant. [Patterson v. Insurance Co., 174 Mo. App. 44; Keller v. Insurance Co., 198 Mo. 440.] If the fact of an adverse decision is to constitute the sole and decisive test, it

would be fairly plain that this court was in error when it held the statute to be constitutional. For it is only upon the fundamental ground of a *vexatious refusal* to pay that the penalty inflicted by the statute can be upheld. The defendant is to be allowed to entertain an honest difference of opinion as to its liability, or as to the extent of such liability under the contract of insurance, and to litigate that difference; otherwise, the provision of the statute is obviously so shot through with duress as to be invalid upon any view. *It is from the very nature of the case, and from the protean form which the facts of the case assume, difficult, if not impossible, to frame any general rule for use in determining when a refusal to pay is vexatious and when it is not.* Judge TRIMBLE, of the Kansas City Court of Appeals, has announced a rule, which commends itself to us so far as it goes, and it goes as far as it is wise or safe to go in announcing a rule to govern cases wherein the facts are as variant as we find them in insurance cases upon this question. This rule reads thus:

" 'And while affirmative proof is not required to show vexatious refusal, yet the penalty should not be inflicted unless the evidence and circumstances show that such refusal was wilful and without reasonable cause as the facts appeared to a reasonable and prudent man before the trial; and merely because the judgment, after trial, is adverse to defendant's contention, is no reason for inflicting the penalty.' [Patterson v. American Ins. Co., 174 Mo. App. l. c. 44.]" (Last-italics ours.)

The Berryman Case merely quoted from the Non-Royalty Shoe Company Case the excerpt we have above set out. Upon a consideration of the facts made in the record in the trial court in the Berryman Case, we held that the question of vexatious delay should not have been submitted to the jury. We have quoted above what respondents said in their opinion in announcing the rule as to damages for vexatious delay. They set out the reasons for sustaining the allowance of damages and at-

torney fees. We cannot go into the record before respondents and dig out facts not stated in the opinion; but it clearly appears from the opinion that neither this court nor any of the courts of appeals of the State prior to the trial of the instant case in the circuit court had held that the days of grace began to run from the date of delivery of the policy and not from the due date specifically named in the policy. We have not yet spoken on that question and have merely held in preceding portions of this opinion that the conclusion reached by respondents on the question is not in conflict with any decision of this court. It also appears from the opinion that in other jurisdictions there is a difference of opinion on the question of when the days of grace begin to run. We quote from the opinion of respondents as follows:

"Appellant cites us to authorities to sustain the opposite view. Two of these cases—Wilkinson v. Ins. Co., 176 Ky. 833, 197 S. W. 557, and Forch v. Ins. Co., 157 Ill. App. 244—are in point, and reach a result contrary to the cases discussed by us, supra. The other cases cited we do not think are of influence in the case."

We think the opinion of respondents is in conflict with the Non-Royalty Shoe Company Case, as therein said: "The defendant is to be allowed to entertain an honest difference of opinion as to its liability . . . ; otherwise, the provision of the statute is obviously so shot through with duress as to be invalid upon any view." The only question this court had previously decided was that the insured had one year's insurance from the date of the delivery of the policy and not from the date of the policy itself, where there was a provision that the insurance should not take effect until the delivery of the policy to the insured and payment by him of the first premium. The question of the date when days of grace begin to run was an open question in this State and a question upon which relator clearly had the right to seek the answer of the courts of this State without being penalized therefor. It had the right to entertain an

honest difference of opinion and to question whether the rule laid down in the Halsey Case was controlling as to days of grace. In this situation the relator had the right to refuse to pay the policy, notwithstanding the repeated demands of the plaintiff below. The conclusion reached by respondent upon the question of vexatious delay must therefore be held to be in conflict with the principles announced in the Non-Royalty Shoe Company Case.

It follows that the record must be quashed in respect to the approval of the allowance of attorneys' fees and damages for vexatious delay. *Walker* and *Higbee, JJ.,* concur; *Graves, J.,* concurs in result; *James T. Blair, C. J.,* concurs in Paragraph III and dissents as to Paragraph II: *Woodson* and *Elder, JJ.,* absent.