PARMELIA J. GOODMAN ET AL., RESPONDENTS, v. NATIONAL LIBERTY INSURANCE COMPANY OF AMERICA, APPELLANT.—65 S. W. (2d) 1061.

Kansas City Court of Appeals. December 4, 1933.

*Pross T. Cross & Son, Crossan & Hall* and *R. H. Musser* for respondent.

*Smith, Walsh & Ellison* and *Hume & Raymond* for appellant.

TRIMBLE, J.—Suit on a fire insurance policy of $2000 on plaintiffs' frame dwelling house in Excelsior Springs, the plaintiffs seeking not only to recover the amount due them on the policy, but also the penalty and attorney's fee for an alleged vexatious delay.

There was a mortgage of $1200 on the property which was held by one, Jefferson Gabbert. The policy contained the usual mortgage clause making loss, if any, payable to said beneficiary as his interest might appear. The defense raised is not against the issuance of the policy nor against the fact of a fire, but upon the contention that a provision of the policy relating to the commencement of foreclosure proceedings on the mortgage, with the knowledge of the insured, was violated, thereby rendering the policy void, before the fire occurred. The plaintiffs' contention in this regard is that if there was a valid, or indeed any, foreclosure proceedings commenced, or notice of sale given, it was wholly without their knowledge.

The trial resulted in a verdict for plaintiffs on the policy in the sum of $2000 with interest at six per cent from date of filing suit (August 17, 1932), amounting to $34.93, for $48 penalty and $300 for attorney's fee, aggregating the sum of $2,382.93, less the amount due on the deed of trust, $1200, leaving a finding for plaintiffs in the total sum of $1,182.93. Defendant appealed.

The clause above mentioned which defendant claims was violated reads as follows:

"This entire policy, unless otherwise provided by agreement endorsed hereon or added hereto, shall be void . . . if, with the knowledge of the insured, foreclosure proceedings be commenced or notice given of sale of any property covered by this policy by virtue of any mortgage or trust deed."

Even if violated, this clause did not affect the amount due the mortgagee under his mortgage for the reason that this was taken care of in the following provision:

"This policy, as to the interest therein of said payee, as mortgagee (or trustee) only, shall not be invalidated by any act or neglect of the mortgagor or owner of the within described property nor by the commencement of foreclosure proceedings, nor the giving of any notice of sale relating to the property," . . .

But, as will perhaps more fully hereinafter appear, the mortgagee obtained the money due on his debt, the defendant insurance company having purchased his note as soon as it learned of the fire or very shortly thereafter, and thereby secured an assignment of the same.

There was no proof whatever of any direct personal knowledge plaintiffs had that foreclosure proceedings were commenced or notice of sale given; indeed defendant does not claim that they had any such direct, personal knowledge of such. Defendant's claim is that plain-

tiffs' son, Valentine, was their agent, and since he knew the property was advertised for sale under foreclosure, his knowledge was their knowledge. On this theory it asked Instruction E as follows:

"Defendant's Instruction E Refused.

"The court instructs the jury that if you find and believe from the evidence that Valentine Goodman was looking after the affairs of the plaintiffs with reference to paying the taxes on the property in question and paying the interest on the mortgage referred to in evidence on said property, and that said Valentine Goodman was authorized to represent plaintiffs with reference to paying the taxes and interest on said property, and that notice of sale of said property under said mortgage had been published by the owner of said mortgage in the Daily Standard, a daily newspaper published in Excelsior Springs, Missouri, prior to said fire, and that said Valentine Goodman knew of the publication of said notice prior to said fire, then the knowledge of said Valentine Goodman was the knowledge of the plaintiffs, and your verdict must be for the defendant."

Defendant asserts the refusal of this instruction was error for the reason, so it is claimed, that there was evidence from which a jury could find that Valentine was such an agent as would make his knowledge that of plaintiffs. However, we do not think so.

Plaintiffs, in addition to the house in Excelsior Springs the insurance on which is the subject of this litigation, owned a farm about ten miles from that city. Mr. Goodman spent much of his time on the farm. His wife spent the winters in town at the house, but he went down there and stayed all night only occasionally. Once when he was sick, he was there a few days. He stated that, during the winters, Mrs. Goodman resided in the property in question with her two daughters and a granddaughter. When spring or summer approached, she and that part of the family would move back to the farm where they would live until fall and then they would return to town. The plaintiffs' sons, including Valentine, lived on the farm which was the old homestead in which they were born. The boys farmed it, and out of the rent, paid or "partially" paid expenses of the old couple when directed to do so. The plaintiffs were near eighty years of age and naturally were not strong. As the old lady said in her deposition taken on the farm, in answer to defendant's question: "So that Valentine Goodman *was looking after your business* there in Excelsior Springs, you not being able to look after it?", "Why, no. The boys was here *to see to what I wanted seen to.*" Later on, when asked about her having a business agent of any kind, she said: "A. Why, no. We have not had no business much to go and see to, paying a little interest, if you have got any money. I don't call that much business."

The evidence is that they took no newspaper, and their sight not being of the best, owing to lack of spectacles or glasses, they saw no advertisement of the town-house for foreclosure and no one told them or either of them about it. Valentine learned when in town of the fact that foreclosure proceedings had been commenced, but he refrained from telling the old folks because he did not want them to worry.

Defendant entertains the idea that Jefferson Gabbert's testimony tends to show that Valentine was the agent of his parents; but it is clear that all Gabbert's testimony shows is that Valentine, at times, paid the interest on his, Gabbert's, mortgage and at other times Gabbert saw Valentine about the interest; but nothing is anywhere shown about Valentine's having anything to do with, or saying anything about, the insurance on the house. In fact, the interest on the mortgage was all that Gabbert had, or took, any interest in.

Defendant apparently seems to think that the fact that the family all lived together, has some bearing on the question of whether Valentine's knowledge was the knowledge of the plaintiffs; but this fact of them all living together and the boys managing the farm, has little or no weight when we remember that they did not all live together anywhere except on the farm ten milee from the town in which the insured house was located. And at the time the house burned apparently one of the boys lived south of the farm and another lived in Lawson, Missouri, leaving only Valentine on the farm. We find nothing in the record anywhere even tending to make it a jury question whether Valentine was such an agent as that his knowledge was the knowledge of his parents, who were the heads of the family and in charge of what was done or to be done.

In Funk v. Anchor Fire Insurance Company, 171 Iowa, 331, 1. c. 344, it was held that, in a similar provision to the one in the case at bar, the words "with the *knowledge* of the insured" (italics mine) means "actual knowledge as distinguished from constructive knowledge or constructive notice." See also Dodge v. Grain Shippers Mut. Fire Ins. Assn., 157 N. W. 955; Philadelphia Agency, etc., of Philadelphia v. Moore, 202 S. W. 990; North British, etc., Co. v. Freeman, 33 S. W. 1091; Brown v. Connecticut Fire Ins. Co., 197 Mo. App. 317, 327, where it is said, "knowledge" in that connection and under principles governing the construction of such contracts means *actual* knowledge. (Italics the court's.) [See also Foiles v. Fire & Marine Ins. Co., 141 N. W. 879.]

This disposes of the claim that the court erred in overruling defendant's demurrer to the evidence based on its contention that plaintiffs' own evidence shows that foreclosure proceedings were begun "with their knowledge." Also the point that error was committed in the refusal of defendant's Instruction E must likewise be disallowed.

The point that the court erred in submitting the issue of vexatious refusal to pay should be upheld.

Whether a refusal to pay is vexatious or not must be determined by the facts as they appeared when the refusal to pay was made. If there is a reasonable doubt as to the defendant's liability on account of the apparent violation of the above-mentioned provision with reference to the commencement of foreclosure, such as would be created in the mind of a reasonable man, then the insurance company has the right to litigate that question, and ought not to be penalized for doing so. The defendant's adjuster went to Excelsior Springs the next day after the fire. He discovered the existence of the mortgage, and that the property had been advertised for sale under foreclosure for several weeks, the date of which sale was only two days after the fire. As the occupants of the house had, several days before that, made their annual spring return to the farm, a custom of which the adjuster knew nothing, he could not or did not ascertain where they were. He made report of the facts, as he found them, to the defendant. Knowing that at all events this would not defeat the mortgagee's claim, the defendant took up the mortgagee's debt, thereby settling with him so far as his rights were concerned. If there was any express refusal to pay plaintiffs' claim, it was not until after they had made demand therefor, possibly sixty days after defendant had learned of the apparent situation and circumstances. This court, in Patterson v. American Ins. Co., 174 Mo. App. 37, l. c. 44, announced the rule (later approved by the Supreme Court in Non-Royalty Shoe Co. v. Phoenix Assurance Co., 227 Mo. 399, 423) thus:

"And while affirmative proof is not required to show vexatious refusal, yet the penalty should not be inflicted unless the evidence and circumstances show that such refusal was wilful and without reasonable cause as the facts appeared to a reasonable and prudent man before the trial; and merely because the judgment, after trial, is adverse to defendant's contention, is no reason for inflicting the penalty." [See also Berryman v. Southern Surety Co., 285 Mo. 379, 398; State ex rel. v. Allen, 295 Mo. 307, 321; Gueringer v. Fidelity & Deposit Co., 184 S. W. 936; State ex rel. v. Fidelity, etc., Co., 317 Mo. 1078, 1095.]

However, for this error in submitting the question of vexatious refusal to pay and its accompanying results the penalty therefor and the attorney's fee, there is no need for reversing and remanding the case, since that error can be cured by a *remittitur* of such penalty and fee. One other point is made as to the introduction of evidence concerning defendant's purchase of Gabbert's note after the fire, but we find nothing in that to call for a reversal of the case. The defendant's liability to Gabbert was unquestioned; it had a right to purchase the note and to do with it and the mortgage as it saw fit. The evidence was evidently gone into in the hope of finding something that would

support the claim of vexatious refusal to pay, but none was found. We see nothing prejudicial to *defendant* in it; and the objection is therefore overruled.

If, for the reasons hereinabove given, the plaintiffs will, within ten days from the announcement of this opinion, enter a *remittitur* of the penalty of $48 and $300 attorney's fee, together with all interest accruing on these two sums from and after August 17, 1932, the judgment will be affirmed; otherwise the entire judgment should be reversed and the cause remanded for a new trial. It is so ordered. All concur.