MOUND CITY ROOFING TILE COMPANY, a Corporation, Respondent, v. SPRINGFIELD FIRE & MARINE INSURANCE CO., a Corporation, Appellant.[*]

St. Louis Court of Appeals.   Opinion filed September 29, 1925.

1. INSURANCE: Fire Insurance: Appraisals: Appraisal Clause Strictly Construed Against Insurer. An appraisal clause in a fire insurance policy will be strictly construed against the insurer.

2. ———: ———: ———: Finding of Appraisers: Without Binding Force or Effect: Question of Value of Insured's Buildings Rightly Submitted to Jury. In an action on a fire insurance policy containing coinsurance and appraisal clauses, where appraisers were appointed and the finding of the appraisers as to the value of the property as stated in their award was without any binding force or effect, *held* that the trial court did not err in refusing the defendant's peremptory instruction, but rightly submitted the question of the actual value of the buildings to the jury, under the evidence and agreed statement of facts, by appropriate instructions.

3. ———: ———: Vexatious Refusal to Pay: Construction of Policy: Open Question: Refusal to Pay Loss Not Vexatious. The question

of law involved in the construction of the fire insurance policy sued on, being an open question in this State and one about which lawyers may honestly entertain different opinions, defendant was entitled to litigate the question in the courts without being penalized therefor, and, *held* that insured, in such case, was not entitled to recover for vexatious refusal to pay the loss.

### ON MOTION FOR REHEARING.

4. ———: ———: Appraisals: Award of Appraisers: Beyond Their Powers: Without Binding Force or Effect. Under a fire insurance policy on buildings and property therein, containing coinsurance clause and an agreement for appraisal, *held* that it was both necessary and proper for the appraisers to ascertain the sound value of the damaged buildings in order to determine the loss or damage to, the damaged buildings, and to state in their award, separately, both the sound value of and the loss or damage to the damaged buildings as ascertained and determined by them, but, as the appraisers went beyond their powers and duties and ascertained and stated in their award in a lump sum the sound value of all the buildings insured, they not only failed to pursue the terms of the policy with respect to an affirmative requirement, but acted in excess of their powers and duties, rendering their appraisement abortive.

---

*Headnotes 1. Fire Insurance, 26 C. J., Section 70; 2. Fire Insurance, 26 C. J., Section 770; 3. Fire Insurance, 26 C. J., Section 796; 4. Fire Insurance, 26 C. J. Section, 560.

Appeal from the Circuit Court of Lincoln County.—*Hon. Edgar B. Woolfolk*, Judge.

REVERSED AND REMANDED. (*with directions*).

*Leahy, Saunders & Walther, Bates, Hicks & Folonie* and *John L. Burns* for appellant.

(1) Sound value and loss and damage are correlative terms, and loss and damage are based upon sound value. Collings Carriage Co. v. German American Insurance Co., 97 Atl. 726; Continental Insurance Company v. Garrett, 125 Fed. 589. (2) The coinsurance clause is applicable to the facts in the case at bar. Sec. 6239, R. S.

1919; 19 Cyc. page 838; Christian v. Niagara Fire Ins. Co., 101 Ala. 634; Chesbrough v. Home Ins. Co., 61 Mich. 333; Peoria M. & F. Ins. Co. v. Wilson, 5 Minn. 53; Farmers Feed Co. v. Scottish Union Ins. Co., 173 N. Y. 241; Teutonic Fire Ins. Co. v. Mound, 102 Pa. State 89; Pennsylvania Fire Ins. Co. v. Moore, 21 Texas 528; Stevenson v. Agricultural Ins. Co., 116 Wis. 277.  (3)  Plaintiff's instructions were peremptory instructions for plaintiff and were in violation of the correct sound-value theory in an award and in violation of section 6293, R. S. 1919, and in violation of the coinsurance contract.  (4) There was no issue in the case of a vexatious refusal to pay, and the court should not have given any instruction regarding attorneys' fees and a penalty.  Non-Royalty Shoe Co. v. Phoenix Assurance Co., 277 Mo. 399; Patterson v. Insurance Company, 174 Mo. App. 44; Keller v. Insurance Company, 198 Mo. 440; Aufrichtig v. Columbian National, 249 S. W. 912; Goldbaum v. Great Eastern Casualty Co., 222 S. W. 868; Lafont v. Home Ins. Co., 193 Mo. App. 543; Zimmerman v. Southern Surety Co., 241 S. W. 95; Agee v. Employers' Liability Assurance Co., 253 S. W. 46; Miller v. Firemen's Insurance Co., 206 Mo. App. 475; Berryman v. Maryland Motor Car Ins. Co., 199 Mo. App. 503; Merkel v. Railway Mail Association, 226 S. W. 299; State ex rel. v. Allen, 295 Mo. 307.

*Jourdan & English* for respondent.

(1)  A policy of insurance must be construed strictly against the insurer and if there be ambiguity therein the interpretation most favorable to the insured will be adopted.  Landrigan v. Missouri State Life Ins. Co., 211 Mo. App. 106; Rosen-Reichardt v. London Assurance Corp., 264 S. W. 433.  (2)  An appraisal clause in a fire policy which recites that it is binding on the parties as to the amount of loss does not bind the parties as an arbitration contract, but binds them only as to the amount of the loss and not as to the amount of sound value.

Security Printing Co. v. Westchester Fire Ins. Co., 204 Mo. App. 401; Dworkin v. Caledonian Ins. Co., 285 Mo. 360. (3) A coinsurance clause incorporated in a fire insurance policy speaks as of the issuance of the policy, and if the insured at the time of taking out the policy maintains the required amount there is no coinsurance, that is to say, the insured bears no portion of the loss unless possibly the insured cancels some of the insurance originally taken out. Oppenheim v. Firemen's Fund Ins. Co., 119 Minn. 421; Packing Co. v. Fire Ins. Co., 67 Mo. App. 215. (4) Assuming the validity of an unsigned coinsurance clause, where the parties have stipulated as to the value of the personal property at the time of the fire, leaving for determination only the value of the real estate at that time, sections 6229, 6230 and 6239, R. S. 1919, conclusively fix the undepreciated value of the real estate and no appraisement can go behind such value. (5) Where fire insurance companies issue policies on real estate and personal property in this State and suit is brought on any policy, the property is conclusively presumed to have been worth at the time of the issuance of said policies the aggregate face amount of all policies issued thereon. R. S. 1919, sec. 6239; Ward v. Ins. Co., 262 S. W. 454; Hilburn v. Ins. Co., 140 Mo. App. 355; Farber v. American Automobile Ins. Co., 191 Mo. App. 329; City of Aurora v. Ins. Co., 180 Mo. App. 263; Spickard v. Fire Ass'n, 164 Mo. App. 1; Told v. Ins. Co., 203 Mo. App. 482-3. (6) Where there is a partial loss of property, real and personal, insurance companies covering the loss must pay the full amount of the loss if insured sues therefor. R. S. 1919, sec. 6231; Non-Royalty Shoe Co. v. Assurance Co., 277 Mo. 399. (7) The coinsurance clause in this policy constitutes merely a promissory warranty, which has to do with other insurance, and such warranty may be and was in this case waived. Murray v. Niagara Fire Ins. Co., 265 S. W. 102. (8) Although in the filing of forms of policies with the Insurance Department the form of a coinsurance clause may be attached to any policy form, such form may not be

used except in cities of one hundred thousand (100,000) inhabitants, and only when signed will such clause be effective. R. S. 1919, secs. 6231, 6232, 6239. (9) Where the claim presented in a suit against a fire insurance company is so clear that reasonable minds may not differ thereon the company is liable for vexatious refusal to pay such claim, and the verdict of the jury must stand if there is a clear finding by the jury that the delay has been vexatious. Trembly v. Fidelity, etc., Co., 243 S. W. 201, 203.

SUTTON, C.—This is an action upon a fire insurance policy issued on March 20, 1922. The policy so far as material here is as follows:

"Springfield Fire & Marine Insurance Company of Springfield, Massachusetts, in consideration of the stipulations herein named and of sixty-nine and 25/100 dollars premium, does insure Mound City Roofing & Tile Company for the term of one year, from the 19th day of March, 1922, at noon, to the 19th day of March, 1923, at noon, against all direct loss or damage by fire, except as hereinafter provided, to an amount not exceeding twenty-five hundred and no/100 dollars, to the following described property while located and contained as described herein, and not elsewhere, to-wit: On buildings, machinery and equipment, including all brick, tile and part frame buildings, adjoining and communicating additions thereto, pallets, trucks, permanent fixtures, signs, awnings, sheds, fences, bins, platforms, bridges, runways, iron smokestacks, equipment and apparatus, including fixed and movable machinery of every description, parts and extra parts of same, tools, implements and utensils, shafting, belting, gearing, pumps, tanks, engines and connections, boiler and all attachments and appurtenances thereto, dynamos, motors, all appliances and connections thereto, office furniture and fixtures, including stationery and advertising matter; also on cars and narrow gauge tracks and all other materials, equipment and supplies, appertaining in whole or in part to

said premises, situated on the southwest corner of Morganford Road and Fyler Avenue, St. Louis, Missouri. . . .

"It being optional with the assured and the assured having elected to accept a coinsurance clause in this policy in consideration of the reduced rate at which this policy is written, it is expressly stipulated and made a condition of this contract, that the assured shall at all times maintain insurance on each item of property insured by this policy to the extent of at least one hundred per cent of the actual cash value thereof, and that failing to do so, the assured shall be a coinsurer to the extent of such deficit, and in that event shall bear his, her or their proportion of any loss. . . .

"This company shall not be liable beyond the actual cash value of the property at the time any loss or damage occurs, and the loss or damage shall be ascertained or estimated according to such actual cash value, with proper deduction for depreciation however caused, and shall in no event exceed what it would then cost the insured to repair or replace the same with material of like kind and quality; said ascertainment or estimate shall be made by the insured and this company, or, if they differ, then by appraisers, as hereinafter provided; and the amount of loss or damage having been thus determined, the sum for which this company is liable pursuant to this policy shall be payable sixty days after due notice, ascertainment, estimate, and satisfactory proof of the loss have been received by this company in accordance with the terms of this policy. It shall be optional, however, with this company to take all, or any part, of the articles at such ascertained or appraised value, and also to repair, rebuild, or replace the property lost or damaged with other of like kind and quality within a reasonable time on giving notice, within thirty days after the receipt of the proof herein required, of its intention so to do; but there can be no abandonment to this company of the property described. . . .

"In the event of disagreement as to the amount of loss the same shall, as above provided, be ascertained by two competent and disinterested appraisers, the insured and this company each selecting one, and the two so chosen shall first select a competent and disinterested umpire; the appraisers together shall then estimate and appraise the loss, stating separately sound value and damage, and, failing to agree, shall submit their differences to the umpire; and the award in writing of any two shall determine the amount of such loss. . . .

"This company shall not be liable under this policy for a greater proportion of any loss on the described property, or for loss by and expense of removal from premises endangered by fire, than the amount hereby insured shall bear to the whole insurance, whether valid or not, or by solvent or insolvent insurers, covering such property, and the extent of the application of the insurance under this policy or of the contribution to be made by this company in case of loss, may be provided for by agreement or condition written hereon or attached or appended hereto. . . .

"No suit or action on this policy, for the recovery of any claim, shall be sustainable in any court of law or equity until after full compliance by the insured with all the foregoing requirements, nor unless commenced within twelve months next after the fire.

"Wherever in this policy the word 'insured' occurs, it shall be held to include the legal representative of the insured, and wherever the word 'loss' occurs, it shall be deemed the equivalent of 'loss or damage.' "

An agreed statement of facts was made and signed by the parties and introduced in evidence, which is as follows:

"It is hereby stipulated between the parties plaintiff and defendant in each of the above cases that the following facts are admitted to be true:

"1. Albert W. Albrecht was chosen by both the plaintiff and defendants to appraise the value and amount of the loss on all property covered by the insurance poli-

cies in suit, except the property classed as building structures; that said Albrecht viewed and appraised said property, fixing the sound value thereof as twenty-eight thousand eight hundred eighteen dollars ($28,818) and the amount of the loss and damage to same as eleven thousand one hundred twenty-four dollars ($11,124), and that the amount of the sound value and loss and damage as fixed by him on said property was correct and has been accepted by the parties as correctly stating the sound value and loss on said property.

"2.    That the defendant chose Bertram Amber and the plaintiff chose C. E. Hamilton, both of the city of St. Louis, Missouri, to appraise the building structures covered by the policies in suit in accordance with the terms of said policies; that the said Amber and Hamilton met on the premises and selected Louis H. Grone as a competent and disinterested umpire; that after viewing the premises the said Hamilton and Amber agreed, without the necessity of consulting the said Louis H. Grone, that the sound value of the said buildings and structures was fifty-one thousand nine hundred seventy-seven dollars and ninety-nine cents ($51,977.99), and the loss and damage to said buildings and structures was nineteen thousand seventy-seven dollars and ninety-nine cents ($19,077.99); that the amount of said loss and damage so stated by said appraisers was correct and agreed upon by the parties hereto to be correct, but plaintiff disputes the amount of said sound value, claiming that it is less as to said building structures than as fixed by Amber and Hamilton.

"3.    The total amount of insurance in force upon said buildings and structures and other property, covering the same and including the amount of the policies in suit in each case, was fifty thousand dollars ($50,000).

"4.    That the fire occasioning such loss occurred on March 16, 1923.

"5.    That by reason of the one hundred per cent insurance clause contained in the policies issued to the

plaintiff herein all of the companies involved reduced the rate of premium charged the assured from three dollars and ten cents ($3.10) per one hundred dollars to two dollars and forty-four cents ($2.44) per one hundred dollars, and that the assured was advised by the agent who wrote the insurance that this reduction in premium was made because of the provision with respect to the one hundred per cent of insurance in said policy, the consideration for such reduction being the agreement on the part of the assured to carry one hundred per cent insurance of the value of the property insured, and it is agreed that the paper on which this said coinsurance clause was written was not signed by the Mound City Roofing and Tile Company or its agents.

"6. It is agreed between the parties that the adjusters representing the companies prepared proofs of loss in accordance with the appraisal and forwarded them to the assured; that the assured made out different proofs of loss, to which objections were made by the adjusters, as shown by letters written to them; which letters were forwarded to the assured. In the original blanks for proofs of loss submitted to the plaintiff by the adjusters for the companies the amount to be claimed by the plaintiff was inserted for each policy; the actual cash value or sound value of the property was inserted as eighty thousand seven hundred ninety-five and 99/100 dollars ($80,795.99); the amount of the loss and damage inserted was thirty thousand two hundred one and 99/100 dollars ($30,201.99); the total amount of insurance, including these policies, carried by the plaintiff was fifty thousand dollars ($50,000), and the amount inserted as the amount to be claimed by the plaintiff was based upon said coinsurance clause, using the said sound value and amount of loss and amount of insurance carried as the basis, it is agreed that the companies involved in this loss made a proper cash tender to the plaintiff of the amount of loss and damage as shown by the proofs of loss which the said companies presented to the plain-

218 Mo. Sup. 26.

tiff for signature, but which the plaintiff refused to sign, and it is agreed that the amount so tendered was the correct amount due plaintiff if the coinsurance clause applied and if the sound value of the property was eighty thousand seven hundred ninety-five and 99/100 dollars ($80,795.99), the contention of the plaintiff being that the coinsurance clause is not operative or effective because it was unsigned by the parties, and also that the sound value of the buildings and structures was not as much as set forth by the appraisers and hereinbefore mentioned in paragraph two of this stipulation.

"7. It is agreed that the stock fire insurance companies writing the insurance involved in this case, and all other stock fire insurance companies doing business in Missouri, maintain a rating bureau in St. Louis, which bureau makes a survey of every risk in St. Louis and fixes and determines the rate of premium that should be charged for fire insurance on said risk, and said insurance companies have filed a list of said rates in the office of the Superintendent of Insurance in Jefferson City, and that the rate fixed by such bureau is the rate that is charged by all of said companies unless the coinsurance clause hereinbefore referred to is inserted in the policies, in which event the premium is reduced.

"8. On May 18, 1923, the Mound City Roofing Tile Company submitted to Adjuster E. W. Bentley, representing a portion of the companies, blank forms of proof of loss filled out, containing the amount of the loss at thirty thousand two hundred one and 99/100 dollars ($30,201.99), the amount of the sound value at fifty thousand nine hundred thirty-two and 99/100 dollars ($50,932.99). Proofs of loss, containing the same figures, were submitted to Adjuster A. L. McCormack for the companies represented by him, and similar proofs of loss containing the same figures were submitted to J. H. Harrison for the companies represented by him, and these three adjusters represent all the companies carrying insurance on all the property involved in the

case, and each of the adjusters forthwith, on the receipt of said proofs of loss, made written exceptions thereto.

"9. The parties reserve the right to introduce further evidence in the case, and the foregoing stipulations are subject to objections on the part of either of the parties because of the relevancy, competency or materiality."

The plaintiff introduced evidence showing that the actual cash value of the building structures at the time of the fire was $21,000 to $23,000.

The cause was tried to a jury. There was a verdict for plaintiff for the sum of $1,510.09 on account of the loss sustained by the fire and $200 for attorney fees, and judgment was given accordingly. Defendant appeals.

The defendant contends that the finding of the appraisers as to both the sound value of the buildings and the loss or damage thereto is conclusive, and that the court erred in permitting the plaintiff to show the actual cash value of the buildings and in declining to instruct the jury peremptorily to find for the plaintiff in the sum of $934.51. It is the defendant's contention that the sound value of the buildings was conclusively established by the appraisement, as $51,977.99, which added to $28,818, the agreed value of the property other than buildings, makes a total valuation of $80,795.99; that since the total insurance carried by the plaintiff on the entire property amounted to only $50,000, the plaintiff therefore became a coinsurer to the extent of $30,795.99; that the defendant is not liable under its policy for a greater proportion of the loss than the amount of its policy bears to the whole insurance, including the amount assumed by the plaintiff as a coinsurer; that the whole insurance, treating the plaintiff as a coinsurer for $30,795.99, amounts to $80,795.99, or the total value of the property insured; that as $2500, the amount of defendant's policy, is to $80,795.99, the total value of the property insured, so is defendant's liability; that the defendant's liability so arrived at amounts to $934.51 and no more; and that

the court should have peremptorily instructed the jury to find for the plaintiff for that amount and no more.

The appraisal clause was made and inserted in the policy by the insurer for its protection and advantage. It is in the nature of a condition, compliance with which, on the demand of the insurer, is a prerequisite to the maintenance of an action upon the policy by the insured. Under it the insured at the option of the insurer must surrender its right to have the amount of its loss determined by a tribunal ordained by law for that purpose and submit the determination thereof to appraisers selected by the parties. Though the policy in express terms defeats the insured's action for a refusal by the insured to submit to appraisers the determination of the amount of the loss, it puts the insurer at no disadvantage for a like refusal on its part, for the insured must in such case nevertheless carry the burden of proving the amount of its loss. There can be no question that the appraisal clause ought to be strictly construed against the insurer.

The policy provides that the insurer shall not be liable beyond the actual cash value of the property, and that the *loss or damage* shall be *ascertained or estimated* according to such actual cash value; that such *ascertainment or estimate* shall be made by the insured and the insurer, or, if they differ, then by appraisers; that *the amount of the loss or damage* having been thus *determined,* the sum for which the insurer is liable pursuant to the policy shall be payable in sixty days; that it shall be optional, however, with the insurer to take all or any part of the property at such ascertained or appraised value, and also to repair, rebuild, or replace the property lost or damaged with other of like kind or quality.

The policy then provides that in the event of disagreement as to *the amount of the loss* the same shall be *ascertained* by appraisers; that the appraisers shall *ascertain and appraise the loss,* stating separately sound value and damage; and the award shall *determine the amount of such loss.*

It is obvious that the ascertainment and determination of the amount of the loss is the cardinal purpose of the appraisement. It is likewise obvious that the actual cash value of the damaged property when sound must be ascertained in order to properly arrive at the amount of the loss or damage, but the ascertainment of the value is but an incident to the ascertainment and determination of the amount of the loss or damage.

The "loss or damage" shall be "ascertained or estimated" according to the actual cash value. Such "ascertainment or estimate" of the loss or damage shall be made by the insured and the insurer, or by appraisers, and "the amount of the loss or damage" shall be thus "determined." In the event of disagreement "the amount of the loss" shall be "ascertained" by appraisers. The appraisers shall "estimate and appraise the loss." In their award they shall state separately "sound value and damage." The award shall "determine the amount of the loss." So says the policy.

This peculiar wording of the policy cannot be ignored. Any expression of an agreement that the award shall determine the actual cash value of the property for the purpose of fixing the insured's liability as a coinsurer seems to be studiously avoided, and the policy is so worded as to strongly indicate that the only purpose for stating the value in the award is to enable the insurer to take the property at the value stated if it should desire to do so. The appraisers must appraise the loss. As an incident to such appraisement of the loss they must ascertain the value. Having ascertained the value as an incident to the appraisement of the loss, they must state the value, as well as the damage, in their award, so that the insurer may take the property at the value stated, if it so elect.

The policy is in blanket form covering a number of separate buildings, with a variety of machinery, vehicles, and other articles, both in and outside the buildings. According to the evidence produced by defendant, as well as that produced by plaintiff, one of the buildings

with its contents was totally destroyed, others were only partially destroyed, and others were not damaged at all. It was not necessary in order to appraise the loss or damage to the damaged buildings that the value of all the buildings in the entire plant be ascertained. In fact, the evidence produced by the defendant, which in this respect is undisputed, shows that the appraisers did not arrive at the amount of the loss or damage by this method. It shows that they appraised the loss or damage to the damaged buildings separately, basing their appraisement upon the value thereof, and afterwards ascertained the value of the undamaged buildings. Obviously they pursued this course because it was unnecessary to ascertain the value of all the buildings as a basis for the appraisement of the loss or damage to the damaged buildings.

It not being necessary to ascertain the value of the undamaged buildings in order to appraise the loss or damage to the damaged buildings, the ascertainment of such value was outside the duties of the appraisers. It was their duty to ascertain the value and appraise the damage to the damaged buildings only, and to state such value and damage separately in their award.

If, however, the policy contemplates, as defendant contends, that the appraisers shall ascertain and state in their award the value of the entire property insured so as to determine the insured's liability as a coinsurer, though this be unnecessary for the purpose of appraising the loss or damage to the damaged property, it necessarily follows, we think, that the value of the damaged and undamaged property must be separately ascertained and stated. If, to illustrate, a single machine or vehicle were damaged to the extent of only a few thousand dollars, does the policy contemplate that the appraisers in such case shall ascertain and state in their award in a lump sum the value of the entire property so that the insurer may, if it so elect, take the entire property at the value so ascertained and stated? Does the policy contemplate that the insured must sell his entire property to the insurer at whatever price the appraisers may fix,

in order to secure an adjustment of a loss or damage of a few thousand dollars to a single machine or vehicle? Obviously the policy contemplates that the appraisers shall ascertain and state separately in their award the value of the damaged property, so that the insurer may, if it so elect, take the damaged property at the value so ascertained and stated, and so that the insured may not be compelled to sell, whether it will or no, its entire property at the price fixed by the appraisers, in order to secure an adjustment of the loss or damage to the damaged property. This the appraisers did not do. So that under any view of the policy it is manifest that the finding of the appraisers as to the value of the property as stated in their award is without any binding force or effect. [Security Printing Co. v. Fire Insurance Co., 204 Mo. App. 390, l. c. 401, 221 S. W. 430.]

We conclude that the court did not err in refusing the defendant's peremptory instruction, but rightly submitted the question of value to the jury, under the evidence and agreed statement of facts, by appropriate instructions.

Defendant further contends that the trial court erred in submitting to the jury the question of vexatious refusal to pay the loss. This contention must be sustained. The question of law involved in the construction of the policy is an open question in this State. It cannot be said that the question is one about which lawyers may not honestly entertain different opinions. The defendant was clearly entitled to litigate the question in the courts without being penalized therefor. [State ex rel. Missouri State Life Ins. Co. v. Allen, 295 Mo. 307, 243 S. W. 839, l. c. 843; Berryman v. Southern Surety Co., 285 Mo. 379, l. c. 397, 227 S. W. 96; Non Royalty Shoe Co. v. Phoenix Assurance Co., 277 Mo. 399, l. c. 420, 210 S. W. 37; Goldbaum v. Great Eastern Casualty Co., 222 S. W. (Mo. App.) 868, l. c. 869; Miller v. Firemen's Ins. Co., 206 Mo. App. 475, l. c. 494, 229 S. W. 261; Berryman v. Maryland Motor Car Ins. Co., 199 Mo. App. 503,

l. c. 506, 204 S. W. 738; Aufrichtig v. Columbia National Life Ins. Co., 298 Mo. 1, 249 S. W. 912.]

The Commissioner recommends that, if plaintiff will remit $200 as of the date of the judgment, the judgment will be reversed and the cause remanded, with directions to enter a new judgment in favor of plaintiff and against defendant for the sum of $1510.09, with interest at the rate of six per cent per annum from the date of the original judgment, otherwise that the judgment be reversed and the cause remanded for a new trial.

PER CURIAM:—The foregoing opinion of SUTTON, C., is adopted as the opinion of the court. Accordingly it is ordered that, if plaintiff will remit $200 as of the date of the judgment, the judgment will be reversed and the cause remanded, with directions to enter a new judgment in·favor of plaintiff and against defendant for the sum of $1510.09, with interest at the rate of six per cent per annum from the date of the original judgment, otherwise that the judgment be reversed and the cause remanded for a new trial. *Daues, P. J.,* and *Becker* and *Nipper, JJ.,* concur.

## ON MOTION FOR REHEARING.

SUTTON, C.—On motion for rehearing defendant's counsel place an erroneous interpretation upon the opinion. They say that the opinion holds that it was not necessary to ascertain the sound value of all the buildings insured in order to determine the amount of the defendant's liability under the coinsurance clause of the policy and that it was not necessary to ascertain the sound value of the damaged buildings in order to determine the amount of the loss or damage to the damaged buildings. The opinion does not so hold. It does hold that it was neither necessary nor proper for the appraisers to ascertain or determine the sound value of all the buildings insured in order to determine the loss or damage to the damaged buildings. It holds that it

was both necessary and proper for the appraisers to ascertain the sound value of the damaged buildings in order to determine the loss or damage to the damaged buildings. It also holds that it was both necessary and proper for the appraisers to state in their award separately both the sound value of and the loss or damage to the damaged buildings, as ascertained and determined by them. But the appraisers did not do this. Though they ascertained the sound value of and the loss or damage to the damaged buildings, and stated in their award the loss or damage to the damaged buildings, as they were required to do, they did not state therein the sound value of the damaged buildings, as they were required to do, but they went beyond their powers and duties and ascertained and stated in their award in a lump sum the sound value of all the buildings insured. They not only failed to pursue the terms of the policy with respect to an affirmative requirement but acted in excess of their powers and duties, and their appraisement was abortive. In determining the portion of the loss for which the defendant was liable under the co-insurance clause, the sound value of the buildings insured was an open question for the jury, and such question was determined by them under the evidence in the case. The amount of the loss or damage to the buildings was not an open question for the jury, not because it had been determined by the appraisers, but because it had been agreed upon by the parties.

If all the buildings had been involved in the fire, so that it had been necessary to ascertain the sound value of all the buildings in order to determine the loss or damage thereto, a different question would be here for decision.

Defendant's counsel seem to take the position that the agreement for appraisement executed by the parties sheds some light on the question here not shed by the terms of the policy, and they complain that we have over-

looked this agreement.   The agreement is as follows
(Italics are ours):
"To Mound City Roofing Tile Co.,
          "St. Louis, Mo.
    "You claim to hold insurance granted by the under-
signed and have made claim for loss thereunder.   As
disagreement exists as to *the amount of loss* which is said
to have occurred on the 16th day of March, 1923, we re-
quest *an ascertainment of the amount of loss, as provided
in the insurance.*  To secure such *ascertainment and ap-
praisement of the loss,* stating separately sound value
and damage, the undersigned selects Bertram Amber of
St. Louis, Mo., as a competent and disinterested apprais-
er, and requests you to select a competent and disinter-
ested appraiser and to advise us of your selection.
    "All Insurance Companies insuring property at 3301
Morganford road, St. Louis, Mo.

"Signed"    J. H. Harrison,

"A. L. McCormack,

"Adjusting Agents.

          "Each by          E. W. Bentley,

    "It is understood and agreed that this appraisal
is to take into consideration such property as is to be
classed as building structures.
    "The undersigned acknowledges the foregoing re-
quest for appraisement and hereby selects C. E. Hamil-
ton of St. Louis, Mo., to act as a competent and dis-
interested appraiser.
    "(Signed)   Mound City Roofing Tile Co.,
          "by James J. Masterson, Pres., Claimant."
    It is obvious that this agreement amounts to noth-
ing more nor less than a submission to the appraisers
under the terms of the policy, to determine the amount
of the loss or damage to the damaged buildings, stating
separately the sound value thereof and damage thereto,
as ascertained by them.   There is no suggestion or hint
in the agreement that the appraisers shall ascertain and
state in their award the value of all the buildings, both

damaged and undamaged, as a basis for the determina-tion of the portion of the loss for which the insurer is liable under the coinsurance clause, or the portion of the loss for which the plaintiff is liable as a coinsurer.

The Commissioner recommends that the motion for rehearing be overruled.

PER CURIAM:—The foregoing opinion of SUTTON, C., is adopted as the opinion of the court. The motion for rehearing is accordingly overruled. *Daues, P. J.,* and *Becker* and *Nipper, JJ.,* concur.