**COMMERCIAL CASUALTY INS. CO. v. FRUIN–COLNON CONTRACTING CO.**

**FRUIN–COLNON CONTRACTING CO. v. COMMERCIAL CASUALTY INS. CO.**

Circuit Court of Appeals, Eighth Circuit. April 16, 1929.

Rehearing Denied June 3, 1929.

Nos. 8207, 8208.

Fred L. Williams, of St. Louis, Mo. (X. P. Wilfley, Earl F. Nelson, and Wayne Ely, all of St. Louis, Mo., on the brief), for plaintiff.

Fred L. English, of St. Louis, Mo. (Morton Jourdan and John T. Sluggett, Jr., both of St. Louis, Mo., on the brief), for defendant.

Before VAN VALKENBURGH and BOOTH, Circuit Judges, and MUNGER, District Judge.

VAN VALKENBURGH, Circuit Judge. These two appeals arose from judgments rendered upon two counts of a petition filed by the Fruin-Colnon Contracting Company against the Commercial Casualty Insurance Company. December 31, 1924, the insurance company issued to the contracting company a policy of insurance whereby, for the period of one year from date, it agreed to indemnify the insured against loss by reason of the liability imposed by law upon the contracting company for damages on account of bodily injuries or death accidentally suffered by any employee or employees of the insured by

reason of the business of the contracting company therein described. By the terms of said policy the insurer's liability for loss was limited to the sum of $5,000 on account of an accident to one person. The policy contained, among others, the following clauses and provisions:

"E. Report and Defense of Suits—Co-operation of Assured.

"If suit is brought against the Assured to enforce a claim for damages covered by this Policy, the Assured shall immediately forward to the Company every summons or other process as soon as the same shall have been served on the Assured, and the Company will, at its own cost, defend such suit in the name and on behalf of the Assured. The Assured whenever requested by the Company, shall aid in effecting settlements, securing information and evidence, the attendance of witnesses and in prosecuting appeals, but the Assured shall not voluntarily assume any liability or interfere in any negotiation for settlement, or in any legal proceeding, or incur any expense, or settle any claim, except at the Assured's own cost, without the written consent of the Company previously given, except that, as respects liability for personal injuries covered hereunder, the Assured may provide at the Company's expense such immediate surgical relief as is imperative at the time of the accident.

"G. Assured's Right of Recovery.

"No action shall lie against the Company to recover for any loss and/or expense covered by this Policy, arising or resulting from claims upon the Assured for damages, unless it shall be brought by the Assured for loss and/or expense actually sustained and paid in money by him after actual trial of the issue, nor unless such action is brought within two years after payment of such loss and/or expense; nor for any other loss or damage covered by this Policy unless action is brought within two years after the occurrence causing the loss or damage."

The first count of the petition involved an alleged loss because of injury to one Ernest Scheibe. The second count concerns an injury to one E. D. McGuire. Scheibe and McGuire were employees of the contracting company, and both accidents were covered by the same policy, and recovery for both was sought in one suit. The plaintiff contracting company recovered on the first count; and the appeal of the insurance company appears under No. 8207. The judgment on the second count was in favor of the insurance company, and the contracting company has appealed under the number in this court of 8208. Both cases will be treated in one opinion. We deal first with cause No. 8207.

January 20, 1926, Ernest Scheibe, employee, instituted suit in the circuit court of St. Louis, Mo., against the Fruin-Colnon Contracting Company to recover the sum of $25,000 on account of injuries received by him while in the employ of the contracting company. The trial, on the 9th day of November, 1926, resulted in a judgment in favor of the plaintiff in the sum of $12,500 and costs taxed in the sum of $231.75. The insurance company, pursuant to the terms of the policy, conducted the defense of said suit, and on November 12, 1926, caused a motion for new trial to be filed, which motion was overruled on the 13th day of December, 1926; thereafter, to wit, on December 24th, the insurance company wrote the contracting company as follows:

"St. Louis Claim Division.

"John T. Sluggett, Jr., Counsel,

"Pierce Bldg.

"St. Louis, Mo. December 24th, 1926.

"Fruin-Colnon Contracting Co., Merchants Laclede Building, St. Louis, Missouri. Gentlemen: It is our desire to take an appeal to the Supreme Court in the case of Scheibe versus Fruin-Colnon Contracting Company, and in order to stay execution while the case is on appeal, it will be necessary to furnish an appeal bond.

"The judgment in this case, as you know, was $12,500.00 and an appeal bond in the sum of $25,000.00 will be required. It will be necessary for you to furnish the appeal bond or deposit collateral with us to protect us against loss in cases of our liability to you under the policy of insurance issued to you by this company, and we suggest that you give this matter immediate attention and let us know, without delay, whether you will furnish the appeal bond, or if you will deposit the necessary collateral. If the latter, kindly arrange to do so without delay."

December 25th, Christmas Day, fell on Saturday; the following day was Sunday, and, consequently, said letter did not reach the contracting company until Monday, December 27th. The contracting company, appellee in this case, through its president, did not understand the letter, and sought to communicate with counsel for the insurance company, by telephone, for the purpose of ascertaining how it was expected to proceed in the matter. Meantime, on December 23d, a writ of execution issued out of the office of the clerk of the circuit court of St. Louis, and

was delivered to the sheriff of that city. On December 27th the sheriff proceeded to execute this writ, appeared at the place of business of appellee, and threatened forthwith to levy upon and seize the property and effects of appellee to satisfy said judgment and costs of suit unless the judgment was paid at once. Appellee attempted again to get into communication with counsel for appellant, but again without success; thereupon, to save its property and business from levy and consequent great injury, it paid the judgment and accrued costs in the sum of $12,731.75. Demand was made of appellant for payment in the sum of $5,092.70, the same being the proportion of the judgment and costs due from the insurer under the terms of the policy. Upon payment being refused, suit was brought.

At the trial a jury was waived in writing. By stipulation certain facts were admitted to be true; as to others testimony was introduced. The court made no special findings of fact, and none were asked by either party; both parties asked declarations of law. The court refused those tendered by appellant, gave those requested by appellee, and found the issues in favor of appellee. Judgment was rendered on this first count in the sum of $6,660.02, which included damages for vexatious refusal of appellant to pay in the sum of $509.27 and $750 allowed as attorneys' fee.

The points raised by appellant may all be summed up under a single head, to wit, that the demurrer to the evidence under this count should have been sustained. The following grounds in support of this demurrer are urged: (a) That no action under the policy would lie until the loss had been actually sustained and paid in money after trial of the issue, including final judgment on appeal. It is pointed out that the Supreme Court might reverse the judgment below or hold the question moot because of payment and discharge of the judgment by appellee; that in either case appellant would suffer serious prejudice. (b) The judgment was for $12,500, and the policy limit was $5,000. If appellant appealed without bond, execution could be levied; if it gave bond, it assumed a liability in excess of that required by the policy. It contends that it notified appellee that it would be necessary for appellee to furnish the appeal bond, or to deposit with appellant collateral to protect it against loss for the amount of the judgment in excess of $5,000 in case the judgment should be affirmed. (c) That appellee violated the conditions of the policy (1) by failure to co-operate in the appeal by giving bond or indemnity for the excess, and (2) in making payment without the company's written consent; therefore appellant contends that it did all that was required of it by taking the appeal within time on the 24th of January, 1927. (d) It is further contended that the allowance of damages for vexatious refusal to pay was without warrant, for the reason that there existed reasonable ground for an honest difference of opinion on the part of counsel as to the liability of appellant under its policy upon the undisputed facts.

The duty of an insurer under a policy such as that before us is thus stated in 36 C. J. §§ 102, 103, pp. 1111, 1112, and is supported by the great weight of authority:

"*Manner of Conducting Defense*—(1) *In General.* In conducting the defense, it is the duty of insurer to act in good faith, and in a careful and prudent manner; otherwise, it is liable for damages caused by its negligence, even though such damages exceed the amount limited in the policy; unless insured was guilty of contributory negligence. It is insurer's duty to conduct the whole defense, regardless of the amount involved, whether it exceeds or does not exceed insurer's liability; and to protect insured as well as itself against liability at all stages of the litigation.

"(2) *Appeal.* Insurer in conducting the defense not only has the right to appeal from an adverse judgment, but it may be its duty to do so, as where it has expressly agreed to appeal. Where, however, there is nothing to show that the judgment was erroneous, and that plaintiff could not have succeeded on a second trial, a mere failure to appeal does not constitute of itself either a tort or a breach of contract. In furtherance of its duty to appeal it is also insurer's duty to furnish an appeal bond; and if it appeals without furnishing a supersedeas bond, as required by the policy, insured may pay the judgment and maintain an action against insurer for an amount not exceeding the liability stipulated in the policy."

Where an insurance company has failed to discharge its full duty as thus declared, and to protect the insured as well as itself against liability at all stages of the litigation, as by failure to furnish a supersedeas bond where that is required, the insured may protect its property and its credit by payment of the judgment against it. In such case it may maintain an action against the insurer for an amount not exceeding the liability stipulated in the policy, and its suit will not be premature; it will not violate a provision of the policy prohibiting it from settling any

claim without the consent of the company previously given. Pacific Coast Casualty Co. v. General Bonding & Casualty Ins. Co. (C. C. A. 9), 240 F. 36; Rochester Mining Co. v. Maryland Casualty Co., 143 Mo. App. 555, 128 S. W. 204; Johnson v. Maryland Casualty Co., 103 Neb.. 371, 171 N. W. 908; Upton Cold Storage Co. v. Pacific Coast Casualty Co., 162 App. Div. 842, 147 N. Y. S. 765.

In Schroeder v. Columbia Casualty Co., 126 Misc. Rep. 205, 213 N. Y. S. 649, the injured person sought to maintain a direct action against the insurer under a New York statute permitting this to be done where an execution is returned unsatisfied because of the insolvency of the insured. The case was being diligently prosecuted on appeal, and it was held that "the liability imposed by law" provided for in the policy had not been finally established and, therefore, that the action was premature. The case does not involve the point here presented and is without application.

Appellant, however, insists that a rule, different from that announced in the above citations, controls when the judgment against the insured exceeds in amount the liability of the insurer under the terms of the policy, and relies upon the decision of the appellate division of the New York Supreme Court in Kennelly v. London Guarantee & Accident Co., Limited, 184 App. Div. 1, 171 N. Y. S. 423, for support. In that case the judgment obtained by the injured parties against the insurer aggregated more than $13,000. The liability of the insurer under the policy was $10,000. The latter, conducting the litigation, appealed the case, but gave no security to stay execution. The insurer had offered to give such security to the extent of its liability under the policy, but the judgment debtor was unable to furnish security for the balance. An execution against the property having been returned unsatisfied, the insured, being threatened with a body execution, settled the judgment without the consent of the insurer by the payment of $6,000. He demanded reimbursement from the insurance company; and the court held that his action had released the insurer from liability. We do not think, under the facts in this case, that appellant is in a position to avail itself of this defense. Conceding, without deciding, that it may have been the duty of the insured to cooperate with the insurance company in taking the appeal to the extent of furnishing security for the excess judgment over the policy liability of the insurer, nevertheless the obligation to protect the insured from the disaster of a levy under execution still rested upon the insurer to the extent, at least, of giving to the former reasonable opportunity to co-operate in the furnishing of supersedeas. In this respect we do not think the appellant conducted the defense in the careful and prudent manner required. The motion for new trial was overruled December 13th; thereupon, the property of appellee became subject to execution unless prompt steps were taken to stay such action. The letter of appellant's counsel was not written until December 24th, on the eve of a double holiday, and did not reach appellee until December 27th—two weeks after the judgment in the trial court became final. Even then, because of error in transcription, the word "excess" did not appear in the letter, and that letter conveyed no intelligent meaning, to the lay mind, at least. However, the sheriff, armed with execution, and threatening immediate levy and closing of appellee's business, appeared almost simultaneously with the letter carrier. Appellee was afforded neither time nor opportunity to avert disaster otherwise than by payment.

Our conclusion is that appellant did not act with required diligence in the premises; that appellee was not guilty of contributory negligence, and did not fail and refuse to co-operate with appellant in taking the appeal. Under such circumstances, appellee was justified in satisfying the judgment for the protection of its property and business credit without the consent of appellant, written or otherwise, and is entitled to maintain this action for the amount stipulated in the policy.

The matter of penalty for vexatious refusal to pay is not free from difficulty. The rule in Missouri is that where the question of law presented is an open one in the state, and one about which lawyers may honestly entertain different opinions, a defendant is entitled to litigate the question in the courts without being penalized therefor. Mound City Roofing Tile Co. v. Springfield Fire & Marine Insurance Co., 218 Mo. App. 395, 277 S. W. 349; Non-Royalty Shoe Co. v. Phœnix Assurance Co., 277 Mo. 399–422, 210 S. W. 37; State ex rel. Gott v. Fidelity & Deposit Co., 317 Mo. 1078, 298 S. W. 83–91; State ex rel. Missouri State Life Ins. Co. v. William H. Allen et al., 295 Mo. 307, 243 S. W. 839.

It has also been held that:

"An accident insurance company cannot be charged with vexatious refusal to pay, so as to be liable for the statutory penalty and attorney's fee, where its refusal was based upon a question of law as to the construction

of an exception from the terms of the policy, which was an open question within the state, but which had been decided favorably to the contention of insurer by the Supreme Court of another state." Cooper v. National Life Insurance Co., 212 Mo. App. 266, 253 S. W. 465.

The whole question of vexatious refusal or delay is said to be a matter of fact to be determined by a jury. Kahn v. London Assurance Corporation, 187 Mo. App. 216, 173 S. W. 695. If so, it is equally one for the court sitting as a jury upon a proper declaration of the law. However, the Missouri Appellate Courts have not hesitated to set aside a verdict assessing penalties where there is no proper evidentiary basis for the assessment. Fager v. Union Assurance Co., 189 Mo. App. 464, 176 S. W. 1064. On the whole, in view of the construction by the courts of Missouri of the statute permitting the imposition of penalties for vexatious refusal to pay in insurance cases, we incline to adopt the language of the Supreme Court of Missouri upon a similar point:

"While that issue was decided by the jury in favor of appellant, we cannot say that the evidence and surrounding circumstances show that respondent's refusal to pay the first loss was wilful and without reasonable cause or excuse, based upon the facts as they may have reasonably appeared to respondent before the trial. We, therefore, conclude that the evidence is not sufficient upon which to support an assessment of attorney's fees for vexatious refusal to pay the first loss, which is the basis of the first count of the petition." Block v. United States Fidelity & Guaranty Co., 316 Mo. 278-303, 290 S. W. 429, 440.

Turning now to cause No. 8208, we find that on January 15, 1926, E. D. McGuire filed suit, in the circuit court of St. Louis, Mo., against his employer, appellant herein, to recover the sum of $25,000, on account of injuries claimed to have been suffered by him on the 25th day of July, 1925, while working for appellant in the line of his duty as an employee. On March 11, 1927, McGuire recovered judgment against appellant in the sum of $3,000 and costs taxed in the sum of $117.05. The defense of this case was conducted by the insurance company, appellee herein. March 14, 1927, appellee filed a motion for new trial in said cause, which was overruled March 21, 1927; thereafter, on the 16th day of April, 1927, a writ of execution issued on said judgment and was delivered to the sheriff of the city of St. Louis. On the 18th day of April, 1927, said sheriff proceeded to execute this writ and threatened to levy upon and seize the property and effects of appellant out of which to satisfy said judgment and costs, unless appellant should forthwith pay the same. Thereupon, to protect his property and business credit, appellant paid said judgment and costs. No affidavit for appeal, appeal bond, or supersedeas bond was filed in said cause. Demand was made upon appellee for payment under the terms of the indemnity policy of insurance, which was refused; thereupon, suit was brought as hereinabove set forth. A jury was waived in writing, and the facts applicable to this second count were fully agreed upon by stipulation. The court found the issues on this second count in favor of appellee and entered judgment accordingly.

These further facts are necessary to an understanding of the issues presented for our consideration. The policy of insurance under which recovery is sought contains the following provision:

"The Assured, upon the occurrence of an accident, shall give immediate written notice thereof to the Company with the fullest information obtainable. He shall give like notice with full particulars of any claim made on account of such accident. If, thereafter, any suit or other proceeding is instituted against the Assured, he shall immediately forward to the Company every summons, notice or other process served upon him. Nothing elsewhere contained in this Policy shall relieve the Assured of his obligations to the Company with respect to notice as herein imposed upon him. The Assured shall at all times render to the Company all co-operation and assistance in his power."

The injury to McGuire occurred July 25, 1925. It consisted of a wrenched or dislocated left arm at the shoulder, as the result of the slipping of a scaffold board upon which he was standing while at work. Appellant first notified appellee of this accident on September 16, 1925. It claimed that neither the superintendent nor timekeeper of appellant had been aware of the accident until September 14, 1925, on which date McGuire reported again for work. From the date of the accident until September 14th he had been in hospital—a period of nearly two months. One Joseph X. Kane was one of appellant's superintendents. It is admitted that on Monday night, July 27, 1925, McGuire called Kane over the telephone at the latter's residence, and informed Kane that he (McGuire) had injured his left shoulder while at work for appellant. Kane was at that time resting at his home. Returning to work the following morning, July 28th, 1925, Kane made inquiry among the employees of appellant, and made investigation of the alleged injuries.

He found McGuire absent from work, and this absence continued until September 14th, 1925. Kane made no report of the affair to appellee, nor to his superior officers.

Upon receiving notice of the accident in September, counsel for the insurance company wrote appellant as follows:

"St. Louis, Mo. 9/28/25.

"Gentlemen: We are in receipt of report of accident to one of your employees by the name of E. McGuire who sustained a wrenched left shoulder.

"Upon examination of the report we find that this accident occurred on July 25th but we did not receive report of same until September 16th. It appears that approximately two months have elapsed since this accident occurred and inasmuch as the policy of insurance issued to you specifically provides that we should receive immediate report of all accidents we cannot in the absence of some satisfactory explanation as to why this report was delayed, assume any liability for this injury.

"In the absence of some satisfactory explanation, it will be necessary for us to handle this case under reservation of rights. By that we mean that we will be willing to investigate the case with the understanding that by so doing we would not be understood as waiving any of our rights under the terms of the policy of insurance issued to you, should it appear by our investigation that our rights have been prejudiced by reason of your failure to comply with the terms of your insurance policy.

"We would be pleased to have you advise us at this time why the report was not mailed to us promptly at which time we will be very glad to give this matter our further attention."

To this appellant made the following reply:

"September 29th, 1925.

"Dear Sir: Acknowledging receipt of your letter under date of September 28th, 1925 re accident report of E. McGuire.

"As previously written you when sending in the report, neither the Superintendent or Timekeeper on the work were aware this accident had occurred until Mr. McGuire appeared on the job on September 14th and said he had been injured on July 25th, 1925, necessitating his going to the Hospital for two months. At the same time we received a notice from Dr. Williams in charge of the Hospital (said notice being attached to the report stating he had been a patient of Dr. Williams and was still under his care).

"We have endeavored at all times to co-operate with you and have accidents reported promptly and all available data given you and in the present instance a report was made out immediately and mailed to the Harkins office. All accident reports are mailed to the Harkins office the day they are received."

Again, on November 30, 1926, counsel for the insurance company wrote appellant as follows:

"Gentlemen: The case of E. D. McGuire versus Fruin-Colnon Contracting Company is set for trial in the Circuit Court, Monday, December 13th.

"This case, you will remember, was not reported to us until September 24th, 1925, although the plaintiff alleges that he was injured on July 25th, 1925. As you claim that you knew nothing of this man having been injured on July 25th, 1925, we wrote you on September 28th, 1925, that under the circumstances, we would be willing to handle the case under reservation of rights, and since that time we have been handling the matter for you on the conditions outlined in our letter of September 28th, 1925, and we shall continue to do so until you receive notice to the contrary.

"The amended petition filed by the plaintiff asks for a judgment in the sum of $25,-000.00 and as the liability of this Company, under the terms of the policy issued to you, in any event, is limited to $5,000.00, you, of course, have the right to have your personal attorney look after your personal interests in this litigation. You may also report this matter to the Insurance Company carrying insurance in excess of $5,000.00, if you desire so that they can participate in this litigation if they see fit to do so."

To which appellant made this reply:

"Dear Sir: Re Accident case E. D. McGuire. We acknowledge receipt of your letter under date of November 30th, 1926 in regard to above mentioned case.

"We understand you are handling this case under the terms of your policy."

On March 5, 1927, counsel for appellee again wrote appellant:

"Gentlemen: Re E. D. McGuire vs. Fruin-Colnon Cont. Company. The above entitled case is on the docket for trial Monday, March 7th.

"We wrote you on November 30th and also on December 8th, 1926, concerning this case and the situation at the present time is the same as it was when those letters were written.

"While the case will be called Monday, March 7th, it is near the foot of the docket.

and probably will not be reached for trial before Wednesday or Thursday of the week.

"Please let me know if either your personal attorney, or the attorney representing the Lloyds of London will be associated with him in the trial of this case."

To this letter appellant made the following reply:

"In answer to your letter of March 5th, 1927, we would call your attention to our letter of December 2d, 1926, in reply to yours of November 30th, 1926."

Then followed some correspondence concerning the probable date of trial and the required attendance of witnesses. As has been stated, judgment was entered on March 11, 1927, and the motion for new trial was overruled on the 21st. On March 25th appellee, through its counsel, advised appellant that it would take an appeal from the order of the court overruling defendant's motion for new trial with the distinct understanding, however, that by so doing it would not waive its right to deny liability because of delay in reporting the accident according to the terms of the policy; that if the judgment of the Circuit Court should be affirmed, the insurance company would not be liable for any loss or damage sustained. Appellee also announced that the company would not furnish the appeal bond, but would conduct the appeal if appellant was willing that this should be done under these conditions. Appellant, through its counsel, replied that it would at all times hold said insurance company for any and all loss which it might sustain on account of said claim and judgment, and that the appeal must be taken with that understanding; thereupon appellee withdrew from further participation in the litigation, and no appeal was perfected.

Appellant bases its claim for reversal upon two contentions: (1) That knowledge of Kane, acquired while not· acting for appellant, did not charge the corporation with notice of the injury in July, and that report was made to appellee as soon as knowledge was acquired by the corporation. (2) That, in any event, when an insurance company exercises full control of the defense under an employer's liability policy with· full knowledge of the facts, it cannot withdraw after judgment and deny liability, but is estopped by its conduct. Of these, in their order:

1. The general rule respecting notice to corporations of the nature under discussion may be thus stated: Notice to an officer of a corporation is not such notice to the corporation as to affect its rights, unless such notice or knowledge of the officer is in regard to a matter coming within the sphere of his duty while attending to the business of the company, and acquired while acting in regard to the same. McDermott v. Hayes (C. C. A. 1) 197 F. 129; Armstrong v. Ashley, 204 U. S. 272–283, 27 S. Ct. 270 (51 L. Ed. 482); Fidelity & Deposit Co. of Maryland v. Courtney, 186 U. S. 342–363, 22 S. Ct. 833 (46 L. Ed. 1193); Frankfort Marine, Accident & Plate Glass Insurance Co. v. John B. Stevens & Co. (C. C. A. 9) 220 F. 77; Kearney Bank v. Froman, 129 Mo. 427, 31 S. W. 769, 50 Am. St. Rep. 456.

There is no doubt that this rule applies where the agent acquires knowledge incidentally while engaged in his own business, or in a manner entirely disconnected with his employer's business. It may be doubted whether it applies to a situation like the present one. McGuire gave the notice to Kane in his capacity as superintendent. The matter was one coming within the sphere of Kane's duty while attending to the business of the company. Unless resting between two work days operated to disconnect him from his employment and to break its continuity, he may not unreasonably be said to have been acting in the business of his employer when he received this report of injury from one who worked under him. The Supreme Court of Missouri has said (Chouteau v. Allen, 70 Mo. 290):

"The rule that the knowledge of the agent affects the principal, is applicable not only to knowledge acquired during the continuance of the agency, but to such as was acquired so shortly before it began as necessarily to give rise to the inference that it remained fixed in the mind of the agent during his employment."

But however this may be, certainly the next day, July 28th, when he was in the actual discharge of his duties, and when the information of the evening before was fresh in his mind, Kane made inquiry and learned that an accident had occurred. It is urged by appellant that Kane was informed by other employees that McGuire had twisted his wrist while pulling a nail; that this conveyed no notice to him of the accident for which suit was brought. The argument is specious and unconvincing. Kane had notice that an accident had occurred; this, coupled with McGuire's disappearance for a protracted period, was sufficient to require prompt investigation and report. This point is resolved against the insured.

2. In support of its second contention appellant cites the following cases: Employers' Liability Assur. Corp. v. Chicago & Big Muddy Coal & Coke Co., 141 F. 962, Seventh Circuit, by Judges Grosscup, Baker and Anderson; Carthage Stone Co. v. Travelers' In-

surance Co., 186 Mo. App. loc. cit. 332, 172 S. W. 458, opinion by Farrington, J., afterwards adopted by Supreme Court en banc in Carthage Stone Co. v. Travelers' Ins. Co., 274 Mo. 537, 203 S. W. 822; Rosenbloom v. Maryland Cas. Co., 153 App. Div. 23, 137 N. Y. S. 1064; Tozer v. Ocean Acc. & G. Corp., 94 Minn. 478, 103 N. W. 509; Sachs v. Maryland Cas. Co., 170 App. Div. 494, 156 N. Y. S. 419; 34 A. L. R. 744 (c) and cases cited; 4 Joyce on Ins. (2d Ed.) par. 2800 (j), p. 4812; Jaloff v. United Auto Indemnity Exchange, 120 Or. 381, 250 P. 717.

The general rule stated is subject to modification and exception. The case of Carthage Stone Co. v. Travelers' Insurance Co. is without substantial application.

In Rosenbloom v. Maryland Casualty Co. it is held that where an insurer with full knowledge of the facts undertakes the defense of the action, deprives the insured of any control of it, and prevents a settlement for a comparatively small sum, it is estopped after judgment against the insured to deny that the accident is without the policy. But in the opinion this statement occurs: "Notice of the accident was given to defendant as soon as the assured heard of it, and when the action was commenced the papers were delivered to defendant, which undertook the defense without protest or reservation."

In Tozer v. Ocean Accident & Guarantee Corporation, the insurer took control of the defense without informing the insured that it denied liability under the terms of the policy.

In Joyce on the Law of Insurance, vol. 4, par. 2800, p. 4813, it is stated that waiver and estoppel may result where the insurer assumes the defense and control of the action "with full information or knowledge of the character thereof or nature of the claim without denying its liability or reserving its right to do so when it undertakes said defense, or without any notice to assured that it does not intend to waive its rights as to any matters of defense or nonliability."

Jaloff v. United Auto Indemnity Exchange holds that after undertaking the defense of the suit the insurer cannot withdraw on the theory that it had mistaken the nature of its obligation under the policy.

In 36 C. J. par. 98, p. 1109, the exception is thus stated: "Where insurer has given notice that it reserves its rights based on insured's default, the participation by insurer in the defense of the action by the injured person against insured does not show a waiver of the requirement of the policy as to immediate notice of the accident, or of a claim on account of such accident."

In Royle Mining Co. v. Fidelity & Casualty Co., 161 Mo. App. 185–201, 142 S. W. 438, 444, the court said: "If the plaintiff understood that the defendant reserved its rights under its indemnity policy at the time it assumed charge of the defense of the McDaniels action, then there never existed any estoppel against the defendant; but on the contrary, if it took charge of the defense without giving plaintiff any explanation of its act, then its silence was an estoppel." This case was cited with approval by this court in Meyers v. Continental Casualty Co., 12 F.(2d) 52–57.

In Fidelity & Casualty Co. of New York. v. Stewart Dry Goods Co., 208 Ky. 429, 439, 271 S. W. 444, 448 (43 A. L. R. 318) the Supreme Court of Kentucky says: "It had the right to proceed with the action, after giving full notice to the insured of the situation and giving it full opportunity to protect its rights. All it was bound to do was fairly to assert its rights under the policy in such a manner as would be notice to the insured that it did not waive those rights, by proceeding with the defense of the action, and also to do nothing in the defense of the action to the prejudice of the rights of the insured."

Where prompt notice of reservation is given there is no waiver, and hence no estoppel. Edgefield Mfg. Co. v. Maryland Casualty Co., 78 S. C. 73, 58 S. E. 969; to the same effect, Gordon v. Massachusetts Bonding Co., 229 N. Y. 424, 128 N. E. 204. In Sargent Mfg. Co. v. Travelers' Ins. Co., 165 Mich. 87, 130 N. W. 211, 34 L. R. A. (N. S.) 491, notice of reservation was given. To this the insured made no reply. The insurer continued the defense, and it was held that no waiver nor estoppel resulted.

In our opinion appellee gave prompt and unmistakable notice that in entering upon the defense of the case it did not waive the policy requirement of prompt notice of the accident. It is true that when his deposition was taken, in November, 1925, Kane testified to the facts respecting notification of the accident as hereinabove set forth. However, appellee repeatedly advised appellant that it was conducting the defense with the reservations and upon the conditions set forth in its letter of September 28, 1925. Appellant was given full opportunity to assume control of the defense if it did not accede to the conditions imposed by appellee. Its assumption that the insurer was handling the case under the terms of the policy, if construed to mean dissent from those conditions, was unwarranted in view of the repeated notice of reservation contained in the letters of counsel for appel-

lee. Assent by the insured is not indispensable. There is no method by which the insurer can compel the assured to make an explicit agreement to that effect. "All it could or was bound to do was to fairly and reasonably assert its rights under the policy in such a manner as would be notice to the insured that it did not intend to waive those rights by proceeding with the defense of the action." Joyce on Insurance (2d Ed.) par. 2800, p. 4814, and cases cited.

This we think appellant did. The duty of an insurance company in such cases is a delicate one. Prompt notice of accident is of great importance to it in preparing its defense, while the happening is fresh in the minds of witnesses and the facts may be more readily and accurately ascertained. The policy requirement is, therefore, reasonable and substantial. The company is not bound, at its peril, to withdraw from defense at the outset. If it gives due notice of its reservation, does not deprive the insured of control of and participation in that defense, and, in general, does nothing to the prejudice of the insured, it waives none of its rights it may have under the provisions of the policy.

From the foregoing considerations, our conclusion is that the judgment must be reversed, unless within 30 days from the filing of this opinion, appellee in cause No. 8207 files in the clerk's office of the United States District Court for the Eastern District of Missouri, a remittitur in the amount of the penal assessments, aggregating $1,259.27, and within ten days thereafter, file with the clerk of this court a certified copy of the record showing the filing of such remittitur. If such remittitur, and certified copy thereof, be filed, the judgment, less the amount so remitted, will be affirmed. If such remittitur and certified copy be not filed within the time aforesaid, the judgment will be reversed, with directions to grant a new trial.

In cause No. 8208 the judgment of the trial court is affirmed.