## ATLANTIC LIGHTERAGE CORPORATION v. CONTINENTAL INS. CO. OF CITY OF NEW YORK.

### No. 207.

Circuit Court of Appeals, Second Circuit. Feb. 4, 1935.

Tompkins, Boal & Tompkins, of New York City (Arthur M. Boal, of New York City, of counsel), for appellant.

Purdy & Purdy, of New York City (Edmund F. Lamb and John E. Purdy, both of New York City, of counsel), for appellee.

Before MANTON, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

MANTON, Circuit Judge.

The tug Dixie, insured by the appellant, was towing a barge Harry, which came into collision with another vessel, the Herkimer. As a result, one Gladys Turner, on board the barge Harry, was injured, and she and her husband brought suits in the state court to recover for injuries sustained by her and for loss of her services by her husband.

When the summons and complaints in these suits were served, the appellee addressed a letter, dated October 19, 1931, to appellant's agent, stating that the claims sued on were covered by protection and indemnity policy No. C–1002 issued by the appellant, and asked the appellant to give them the necessary attention. In the same letter it stated that a suit had been started by the owner of the barge Harry, claiming damages, which suit was tried in the District Court for the Eastern District of New York, and that the tug Dixie was exonerated and the steamer Herkimer held solely at fault, and that the law firm of Messrs. Purdy & Purdy "appeared for us in this action." The agent replied October 21, 1931, acknowledging receipt of the summonses and complaints, and stated:

"In view of the fact that Messrs. Purdy & Purdy appeared for you in an action brought by the owner of the barge Harry for damages to that craft, in which the tug Dixie was exonerated, and because of Messrs. Purdy & Purdy's familiarity with the case, we suggest that the defense of the action brought by Gladys Turner and Willard Turner be placed in the hands of Messrs. Purdy & Purdy on behalf of the tug Dixie and/or underwriters, as their interests may appear".

Three months later the lawyers sent a bill to appellant's agent for a retainer, and upon receipt thereof the appellant's agent forwarded the bill to the appellee with a letter questioning any liability under the policy of insurance in respect of the accident. A year later the claims of the Turners were settled by the appellee, who thereupon presented this claim under the policy. Payment was refused; the appellant claiming that the policy did not cover the loss. The court below allowed a decree for attorney's fees and disallowed damages paid in settlement.

The policy provides that no liability shall attach to the insurance company "For any loss, damage, expense, or claim arising out of or having relation to the towage of any other vessel or craft, whether under agreement or not, unless such towage was to assist such other vessel or craft in distress to a port or place of safety, provided, however, that this clause shall not apply to claims under this policy for loss of life or personal injury to passengers and/or members of the crew of the Assured's above named vessel arising as a result of towing, subject, however, to amount deductible under this policy." The towage herein was not to assist a vessel in distress, and the appellant was not liable for any loss or damage arising out of towage by the appellee, except where passengers and/or members of the crew of the appellee's vessel were injured as a result of the towage. Mrs. Turner was not a passenger or member of the crew of the Dixie. Consequently no

liability can attach to the appellant under the terms of this provision of the policy.

█ However, there was, in addition to the above-quoted provision, a typewritten rider which provides that no liability shall attach to the appellant "for any claim in respect of tower's liability." Claims for personal liability are not included in tower's liability. The appellee contends, however, that, since that is so, the rider exemption does not exempt the appellant from liability in this case; that personal injury liability is included in other clauses, and the parties have agreed by their contract to deal with personal injury liabilities, and that such intention so expressed shall be carried out. But there is no conflicting intention expressed. Since tower's liability does not deal with personal injury cases, there is no conflict between it and the other excluding clause so far as personal injury claims are concerned. Nothing in the policy indicates an intention of striking out the printed clause by the rider. While the first quoted clause specifically exempts the appellant from liability for a loss such as was here sustained, the last clause does not provide such exemption, but it cannot be argued from this that such liability was imposed.

██ It was held below that the appellant was liable for counsel fees incurred in the defense of Mr. and Mrs. Turner's actions. While it is true that an insurer, when it assumes complete and exclusive control over the defense of a case, without making any reservation of its rights, is deemed to have estopped itself from setting up the defense of noncoverage, still this defendant did not do so. In Empire State Surety Co. v. Pacific Nat'l Lumber Co., 200 F. 224 (C. C. A. 9), the surety company took exclusive charge of the case and appealed to the Supreme Court of the state where it lost, and the assured paid the judgment. That case is typical of a waiver of a defense that an insurer might have. See General Tire Co. v. Standard Accident Ins. Co., 65 F.(2d) 237 (C. C. A. 8); Meyers v. Continental Casualty Co., 12 F.(2d) 52 (C. C. A. 8). But these cases point out that, when seasonable notice in advance of trial is given of the claim of nonliability under the policy, it will be sufficient to prevent a waiver or estoppel. See, also, Bowen v. Cote, 69 F.(2d) 136 (C. C. A. 1); Moulton v. Owler, 5 F. Supp. 700 (D. C., Dist. N. H.).

█ When the appellant sent notice that it did not consider itself liable under the policy, the cause had only proceeded as far as the joining of issue. The settlement was made over a year thereafter, and during that time there was no element of control exercised by the appellant. There was a mere acquiescence in the law firm suggested to handle the litigation. The underwriter may conduct litigation for the assured without prejudice to its rights to maintain that the claims sued on are not covered by the policy, and when it does so no rights are waived. Commercial Casualty Co. v. Fruin-Colnon Contracting Co., 32 F.(2d) 425 (C. C. A. 8); Mason-Henry Press v. Aetna Life Ins. Co., 211 N. Y. 489, 105 N. E. 826. When the appellant wrote stating that the summonses and complaints should be turned over to the assured's attorneys, it did so "on behalf of the tug Dixie and/or underwriters as their interests may appear," which indicated a clear reservation of appellant's rights under the policy. The appellant incurred no legal responsibility, under the circumstances, for the services of the attorneys, and the decree awarding such to the appellee was improvidently granted. The libel in its entirety must be dismissed.

Decree reversed.